(40 App. Div. 513.)
WALSH et al. v. DWIGHT et al.

(Supreme Court, Appellate Division, First Department.　May 12, 1899.)

1. CONTRACT IN RESTRAINT OF TRADE.
　　An agreement by a manufacturer with his customers to give them a rebate if they should refuse to sell his article, or other similar articles, at less than a certain price, is not in restraint of trade.
2. MONOPOLIES.
　　The agreement is not within Laws 1893, c. 716, § 1, prohibiting combinations to restrain competition.

Appeal from trial term, New York county.

Action by John G. Walsh and another against John Dwight and others. There was a judgment for defendants, and complainants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Isaac N. Miller, for appellants.
Alexander P. Ketchum, for respondents.

INGRAHAM, J.　Upon the trial of this action the complaint was dismissed upon the ground that it did not state facts sufficient to constitute a cause of action, and from the judgment entered upon such dismissal·the defendants appeal.　Upon this appeal the facts alleged in the complaint must be taken as established, and it must be determined whether, upon those facts as alleged, the plaintiffs were entitled to a verdict.　The complaint alleges that the plaintiffs, who are doing business in the city of New York as manufacturers of, and dealers in, saleratus and soda, which are articles of common use for the support of life and health, had expended large sums of money in advertising their business throughout the state of New York and elsewhere, had been to great expense in introducing their goods on the market, had prior to January 1, 1896, built up a large and lucrative business, and had prepared plates and wrappers for the various brands of goods used by the jobbers and general dealers in the trade to whom the plaintiffs supplied the said goods; that prior to January 1, 1896, the defendants had been engaged in the manufacture and sale of saleratus and soda, and had built up a large trade in what was known on the market as "Dwight's Cow Brand Saleratus and Soda," and that the said articles, under the said name, had come to be well known and in great demand throughout the country, though substantially of the same grade and quality as those sold by the plaintiffs; that the plaintiffs had prior to January 1, 1896, been supplying jobbers and the trade generally with the said articles at prices considerably lower than those charged for the articles manufactured and sold by the defendants, and thereby had been enabled to make large sales of their commodities; that the defendants, knowing this, and with intent to injure the plaintiffs, destroy, restrain, and prevent competition, and for the purpose of advancing the price of the said articles, and contrary to the statute in such case made and provided, did shortly before, and on or about, the said 1st day of January, 1896, and at other times, wrongfully and unlawfully make and enter into

contracts with large numbers of the jobbers and dealers throughout the state of New York and elsewhere, wherein and whereby these defendants undertook and agreed to pay to the said parties, quarterly, one-half cent per pound on all purchases from said defendants of the said Cow Brand Saleratus and Soda, in consideration of the said parties undertaking and agreeing not to sell, or to permit any person connected with them or under their control to sell, Dwight's Cow Brand Saleratus and Soda at less than the basis of 5½ cents per pound in one pound packages in boxes, or 4 cents per pound in bulk in kegs, f. o. b. in New York City, other packages in proportion "(jobbers outside of New York City to add one-eighth of a cent per pound to the invoice prices for freight), which price was a fictitious and exorbitant price, caused by extensive and extravagant advertising, the benefit of which accrued only to said defendants, and further undertaking and agreeing not to sell any saleratus or soda, in bulk or in boxes, under their own private or other brands, at less price than Dwight's Cow Brand"; and that by reason of the said wrongful and unlawful contracts and combinations of the said defendants, restraining and preventing competition, and creating a monopoly in the said articles, the business of these plaintiffs was utterly destroyed, and they were wholly prevented from competing with the defendants, or making any sales of their goods, and were injured to their damage in the premises in the sum of $50,000.

It is not alleged that the defendants had made any contracts with the customers of the plaintiffs, or with any others than those who were the defendants' regular customers, or persons regularly dealing with them, or that they had induced any of the plaintiffs' customers to break any existing contract with the plaintiffs. The right of action appears to be based solely upon the illegality of the contracts made between the defendants and their customers or persons dealing with them; and the plaintiffs ask to recover from the defendants the damages which they claim to have sustained because, by reason of the alleged illegal contracts made between the defendants and their customers, the defendants' customers refuse to purchase the plaintiffs' goods. Assuming, for the purpose of this argument,—a question, however, which we do not determine,—that a contract made by a firm engaged in the manufacture and sale of an article of commerce, with those dealing with the firm, which is illegal or prohibited by law, would give a cause of action to any third party engaged in the same business, having no contractual relation with either of the parties to the contract alleged to be illegal, the illegality of the contract alleged must be established before there could be any cause of action. There is, however, nothing in the contract alleged in the complaint to have been made by the defendants which prevents the jobbers and dealers from purchasing or selling the goods of others than the defendants. The defendants simply offered to parties purchasing their goods to make a reduction in the price of the goods sold, in consideration of the purchasers agreeing not to sell the goods at a less price than that named, and not to sell the goods of other manufacturers at a less price than that at which they agreed to sell the defendants' goods. It is difficult to see upon what ground it can be claimed

that such a contract is illegal. That the defendants would have the right to establish agencies for the sale of their goods, or to employ others to sell them, at such prices as the defendants should designate, cannot be disputed. Nor can it be that a manufacturer of merchandise cannot agree to sell to others upon condition that the vendees, in selling at retail, should charge a specified price for the goods sold, or should sell only the manufactured product of the manufacturer. If a dealer in articles of this kind, for his own advantage, agrees to confine his business to a particular line of goods, or agrees with the manufacturer to charge a particular price for the articles which he sells in his business, such an agreement is not illegal, as in restraint of trade or as tending to create a monopoly, as there is nothing in the agreement to prevent others from engaging in the business, or the manufacturers of other articles from selling their products to any one who is willing to buy. There is nothing to prevent an individual from selling any property that he has at any price which he can get for it. Nor is there any reason why an individual should not agree that he will not sell property which he owns at the time of making the agreement, or which he thereafter acquires, at less than at a fixed price; and certainly a contract of this kind is not one which exposes the parties to it to any penalty, or subjects them to an action for damages by those whose business such a contract has interfered with.

The plaintiff, however, claims that these contracts are rendered illegal by certain statutes of this state and of the United States. Reliance is placed upon chapter 716 of the Laws of 1893. Section 1 of that act provides that:

"Every contract or combination in the form of trust or otherwise, made after the passage of this act, whereby competition in the state of New York in the supply or the price of any article or commodity of common use in said state for the support of life and health may be restrained or prevented, for the purpose of advancing prices, is hereby declared illegal."

But this contract is not within the prohibition of this statute. There is nothing in this contract that restrains or prevents competition in the supply or the price of any article or commodity. The act is entitled "An act to prevent monopolies in articles of general necessity," and it makes illegal a contract or combination whereby competition in the state of New York in the supply or price of any article or commodity of common use may be restrained or prevented for the purpose of advancing prices. This act did not have the effect of preventing a manufacturer from fixing the price at which his articles should be sold, or from making an agreement with those persons who acted as the jobbers or retailers of his manufactured articles that they would deal exclusively in his merchandise, or would not sell the merchandise of other persons at a less price than that for which his product was sold. The act was evidently intended to prevent manufacturers or dealers in any article or commodity of common use from combining together to advance the price of such article or commodity, by which competition in the supply or price of the same would be restricted or regulated; but a contract by a single manufacturer as to the price at which his goods, when manufactured, should be sold by those selected by him for the purpose of sale or distribu-

tion, would not be a contract by which competition in the supply or price of the commodity would be restrained or prevented. All of the manufacturers could compete with these defendants in the sale of these goods, or the making of a contract such as was made by the defendants. The contract in question simply gave to such of their customers as chose to make the agreement with them an advantage as to the price for which the goods were purchased which those who refused to come. to such an understanding did not share. That such an agreement is not illegal has been settled by a long line of authorities. The principle upon which these decisions are based is stated by Lord Coleridge, in the case of Steamship Co. v. McGregor, 21 Q. B. Div. 544, as follows:

"The defendants are traders, with enormous sums of money embarked in their adventure, and naturally and allowably desire to reap a profit from their trade. They have a right to push their lawful trade by all lawful means. They have a right to endeavor, by lawful means, to keep their trade in their own hands, and by the same means to exclude others from its benefits, if they can. Amongst lawful means is certainly included the inducing, by profitable offers, customers to deal with them rather than with their rivals. It follows that they may, if they see fit, endeavor to induce customers to deal with them exclusively, by giving notice that only to exclusive customers will they give the advantage of their profitable offers. I do not think that it matters that the withdrawal of the advantages is out of all proportion to the injury inflicted by those who withdraw them on the customers who decline to deal exclusively with them dealing with other traders."

This extract from the judgment of Lord Coleridge was quoted with approval by Judge O'Brien in delivering the opinion of the court of appeals in Lough v. Outerbridge, 143 N. Y. 283, 38 N. E. 292, where a contract made by a common carrier to transport freight for a less price when the shipper agreed not to ship by a rival line was held to be legal; Judge O'Brien saying:

"I cannot perceive anything unlawful or against the public good in seeking by such means to retain a business."

The statute of the United States (Act July 2, 1890, c. 647) does not apply. U. S. v. E. C. Knight Co., 156 U. S. 1, 15 Sup. Ct. 249.

We think, therefore, that no cause of action· was alleged in the complaint; and the judgment is affirmed, with costs. All concur.