JULIUS GARST *vs.* HALL AND LYON COMPANY.

Worcester.    September 30, 1901. — October 17, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Equity Pleading and Practice.    Equity Jurisdiction.    Trade-mark.*

Where a bill in equity contains no averment of any fraudulent act or conduct on the part of the defendant, the use of the word "fraudulently" in characterizing his acts, adds nothing to the averments of fact in the bill.

In a suit in equity by the owner and manufacturer of a proprietary medicine, the trade-mark of which was registered in the patent office of the United States and in the office of the secretary of this Commonwealth, against a retail dealer in drugs and medicines, to restrain him from selling the medicine below a certain price, it appeared, that the medicine was sold by the plaintiff under a written contract by which the purchaser agreed that he would not sell nor allow any one in his employ to sell the medicine at less than a certain price per box, which was a higher price than that at which the defendant was selling it to the public, that the defendant bought the medicine knowing the conditions on which

it was sold by the plaintiff, but did not buy it from the plaintiff or from one who purchased it from him. There was nothing to show that the defendant had fraudulently induced or procured the breach of a contract between the plaintiff and any of his vendees. *Held,* that the contracts made with the plaintiff by the original purchasers could be enforced only against them, and that a purchaser from a purchaser had an absolute right to dispose of the property as he pleased.

A trade-mark does not give the proprietor the right to control the sale by others of articles of his manufacture. It is merely to secure him and the public from deception and fraud as to the origin and source of his goods and of similar goods sold in the market.

BILL IN EQUITY by the owner and manufacturer of a proprietary medicine known as phenyo caffein, which is made from a secret formula originated and owned by the plaintiff, the trade-mark of the medicine being registered in the United States patent office and in the office of the secretary of the Commonwealth of Massachusetts, against a corporation established under the laws of Rhode Island and having places of business in the cities of Worcester and Waltham in this Commonwealth as a retail dealer in drugs and medicines, to restrain the defendant from selling at retail phenyo caffein, the twenty-five cent size for less than twenty-five cents per box, and the ten cent size for less than ten cents per box, the prices fixed by the contract under which the medicine was sold by the plaintiff, filed January 10, 1901.

The defendant demurred to the bill and also filed an answer. In the Superior Court the case came before *Gaskill,* J., who reserved it for the consideration of this court on the bill, demurrer, answer and agreed facts. All of the material facts are stated in the opinion of the court. The contract sought to be enforced is printed in full in *Garst* v. *Harris,* 177 Mass. 72.

*W. Thayer & H. W. Cobb,* for the plaintiff.

*C. T. Tatman,* for the defendant.

KNOWLTON, J. This case is reserved on the bill, demurrer, answer and agreed facts, the defendant's rights under the demurrer not being waived.

The plaintiff is the owner and manufacturer of a proprietary medicine known as phenyo caffein, which is made from a secret formula. His trade-mark for said medicine is registered in the patent office of the United States and in the office of the secretary of the Commonwealth of Massachusetts. The defendant

corporation is a retail dealer in drugs and medicines. The plaintiff sells all phenyo caffein subject to the conditions of a contract in which each purchaser agrees that he will not sell nor allow any one in his employ to sell it for prices less than those specified in the agreement for the different sizes of boxes, and promises to pay the plaintiff an agreed sum as damages if he violates this contract. The plaintiff also agrees, as a part of the contract, that in case the vendee at any time desires to discontinue the sale of this medicine and notifies the plaintiff in writing of that fact, he will buy of the vendee any of the medicine which he has on hand at the net cost price at which it was sold to him. Besides these facts the plaintiff's bill avers that the defendant, with full knowledge of the conditions under which the medicine is sold by the plaintiff, has fraudulently obtained large quantities thereof with the intention of retailing it in violation of these conditions and against the right of the plaintiff. The defendant demurs for want of equity and for other causes.

It is not averred that the defendant ever made any contract or agreement with the plaintiff, or had any dealings with him. No fraudulent act or conduct of the defendant in obtaining the medicine is set out, although the word "fraudulently" is used in characterizing his acts. This word adds nothing to the averments of fact in the bill. The statement of the alleged fraud is too general to be the foundation of a decree. *Nichols* v. *Rogers,* 139 Mass. 146. *Nye* v. *Storer,* 168 Mass. 53. The averments of the bill in this particular would be entirely satisfied by showing a purchase of the medicine by the defendant from a person who bought it of the plaintiff's vendee, or from one who bought it of a purchaser from the vendee. The agreed statement of facts shows that the defendant obtained it in this way. The defendant did not buy the medicine of the firm of wholesalers who received it from the plaintiff and who agreed to sell it subject to the above conditions, but bought it of a person who bought either from this firm or from a purchaser from this firm.

The transactions between the plaintiff and his vendee set out in the bill plainly are sales which pass the title to the property.

It is equally, or perhaps more plain that the contract contemplated sales by retailers which shall pass an absolute title to the

property. The purchaser from a purchaser has an absolute right to dispose of the property. He may consume it or sell it to another. The plaintiff has contracts from his vendees in regard to the prices at which they will sell if they sell at all. If they sell in violation of their contracts with the plaintiff he has a remedy against them to recover his damages. *Garst* v. *Harris*, 177 Mass. 72. This right is founded on the personal contract alone, and it can be enforced only against the contracting party. To say that this contract is attached to the property and follows it through successive sales which severally pass title is a very different proposition. We know of no authority nor of any sound principle which will justify us in so holding.

The plaintiff's trade-mark does not give him the rights of a patentee in property manufactured under a patent. His trade-mark is to secure him and the public from deception and fraud as to the origin and source of these goods and of similar goods sold in the market.

The law of copyright also gives privileges to authors and publishers that do not pertain to property which anybody may make and sell if he can; but even under the law of copyright, when the owner of a copyright and of a particular copy of a book to which it pertains, has parted with all his title to the book, and has conferred an absolute title to it upon a purchaser, he cannot restrict the right of alienation, which is one of the incidents of ownership in personal property. *Harrison* v. *Maynard*, 61 Fed. Rep. 689. See also *Clemens* v. *Estes*, 22 Fed. Rep. 899; *Meyer* v. *Estes*, 164 Mass. 457; *Waterman Co.* v. *Waterman*, 27 App. Div. (N. Y.) 133.

In the present case there was not only no contract between the plaintiff and the defendant, as in *Fowle* v. *Park*, 131 U. S. 88, but there is no averment or proof that the defendant fraudulently induced and procured the breach of a contract between the plaintiff and any of his vendees, to the detriment of the plaintiff, as did the defendant in *Exchange Telegraph Co.* v. *Central News*, [1897] 2 Ch. 48, and in *Standard American Publishing Co.* v. *Methodist Book Concern*, 33 App. Div. (N. Y.) 409.

*Bill dismissed.*