[L. A. No. 2054. In Bank.—December 1, 1909.]

## CHARLES P. GROGAN, Appellant, v. H. G. CHAFFEE, Respondent.

MONOPOLY DEFINED—EXCLUSIVE CONTROL OF PRODUCT.—A monopoly exists where all, or so nearly all, of an article of trade or commerce within a community or district is brought within the hands of one man or set of men, as to practically bring the handling or production of the commodity or thing within such control to the exclusion of competition of free traffic therein.

ID.—SALE OF OLIVE OIL—LIMITATION OF PRICE ON RESALE—VALIDITY OF CONTRACT AS BETWEEN ORIGINAL PARTIES—BREACH OF CONTRACT MAY BE ENJOINED.—A manufacturer of pure olive oil, in a quantity relatively small in comparison with the total amount of such oil manufactured or sold in the market supplied by him, may sell his oil on the condition that the buyer shall not resell it at less than a certain minimum price. Such a condition is valid as between the original seller and buyer, and, as between them, its breach may be enjoined by the manufacturer; and it is immaterial, as between them, whether the article is produced under patent or secret formula, or is one that may be produced by any one.

ID.—JUDICIAL KNOWLEDGE OF MANUFACTURE OF OLIVE OIL.—The courts may assume, as a matter of common knowledge, that persons other than the plaintiff may and do manufacture pure olive oil in considerable quantities.

ID.—STANDARD PRICE MAY BE MAINTAINED.—There is nothing either unreasonable or unlawful in the effort by a manufacturer to maintain a standard price for his goods. It is simply a means of securing the legitimate benefits of the reputation which his product may have attained.

ID.—RESTRAINT OF TRADE—CONSTRUCTION OF CODE.—It is not every limitation on absolute freedom of dealing that is prohibited, and it is the tendency of the modern decisions to view with greater liberality contracts claimed to be in restraint of trade. Sections 1673 to 1675 of the Civil Code, relating to contracts in restraint of trade, are to be construed in the light of these principles.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Powers & Holland, for Appellant.

Porter, Sutton & Cruickshank, and Thomas, Gerstle, Frick & Beedy, *Amici Curiæ*, for Respondent.

THE COURT.—A judgment of reversal having been heretofore rendered herein, a rehearing was ordered. The opinion originally filed was prepared by Sloss, J., and read in part as follows:—

"The plaintiff appeals from a judgment against him, following an order sustaining a demurrer to his amended complaint. The demurrer is based upon both general and special grounds. On this appeal, however, the respondent limits his argument in support of the ruling on the demurrer to the ground that the complaint fails to state facts sufficient to constitute a cause of action. We are satisfied that there is no merit in any of the other specifications, and shall address ourselves to the single proposition discussed by counsel.

"The case stated by the complaint is this: The plaintiff has for ten years been engaged in the manufacture and production of pure olive oil by a process of his own discovery. The oil so produced is sold and used for food, medical, and commercial purposes, and plaintiff has extensively advertised to the public the fact that he manufactures a pure olive oil, and that such oil is guaranteed to be pure and wholesome. In his advertising the plaintiff has used certain designs copyrighted by him, and these designs are placed on every bottle or package of oil manufactured and sold by him, as a trademark. By reason of these methods of advertising and dealing, the plaintiff's oil has become well known, and a large quantity thereof is sold throughout the United States, and more particularly in the city of Pasadena, and elsewhere in the county of Los Angeles. The plaintiff has affixed to every bottle or package of his oil a notice stating that the article 'is sold upon the condition that the purchaser, if he retails these goods, will maintain my fixed retail selling price on them; and that if he wholesales them, he will sell them subject to this same condition.' This notice specifies the fixed retail selling price as $1.35 per half gallon can and $2.50 per gallon can. All persons buying said olive oil agree not to sell or deliver any of it at a price less than that provided for in the notice.

"The defendant is a retail grocer, engaged in business in the city of Pasadena. He has bought of plaintiff olive oil under

the express contract and condition that the same should not be sold at a price or prices less than those fixed by plaintiff. He has, however, refused to comply with his contract, and sells and offers for sale said oil at the price of $1.20 per half gallon, and has advertised such offer by publication in a newspaper and by posters and notices posted in the windows of his store. This conduct has been continued by defendant notwithstanding plaintiff's demand that he comply with his contract. The complaint alleges that plaintiff has sustained irreparable damage, that it is impossible to ascertain the damage sustained and to be sustained, and that there is no adequate remedy at law. The prayer is for an injunction restraining defendant from advertising, selling, or offering for sale the oil at prices less than those fixed by the contract, and for damages.

"In support of the ruling sustaining the demurrer it is urged that the contract relied on by plaintiff is unenforceable as being in restraint of trade.

"We have here no question of an attempted monopoly. 'A monopoly exists where all, or so nearly all, of an article of trade or commerce within a community or district is brought within the hands of one man or set of men, as to practically bring the handling or production of the commodity or thing within such control to the exclusion of competition of free traffic therein.' (*Herriman* v. *Menzies*, 115 Cal. 16, [56 Am. St. Rep. 81, 44 Pac. 660, 46 Pac. 730].) It was the tendency to create a monopoly, thus defined, that was the objectionable feature of the agreements declared invalid in such cases as *Pacific Factor Co.* v. *Adler*, 90 Cal. 117, [25 Am. St. Rep. 102, 27 Pac. 36]; *Mill etc. Co.* v. *Hayes*, 76 Cal. 387, [9 Am. St. Rep. 211, 18 Pac. 391]; and *Vulcan Powder Co.* v. *Hercules Powder Co.*, 96 Cal. 510, [31 Am. St. Rep. 242, 31 Pac. 581]. (See, also, *Cummings* v. *Union Blue Stone Co.*, 164 N. Y. 1, [79 Am. St. Rep. 620, 58 N. E. 1]; *Cohen* v. *Envelope Co.*, 166 N. Y. 292, [59 N. E. 906].) The contract here relied on does not relate to any olive oil except that manufactured by plaintiff. There is no suggestion that this comprises all, or any large proportion, of the olive oil manufactured or sold in the market supplied by plaintiff. While plaintiff alleges that he manufactures oil by a process of his own discovery, there is nothing exclusive in the product resulting from this process. All that he claims for his oil is that

it is pure and wholesome. The court must assume, as a matter of common knowledge, that others may and do manufacture pure olive oil in considerable quantities.

"Under these circumstances we see no reason why the contract alleged by plaintiff should not, as between the parties to it, be held to be valid. It violates no canon of public policy. By its terms the buyer is not precluded from engaging in any lawful trade. He may sell other olive oil at any price and on any conditions satisfactory to him. The producer was, in the first instance, under no obligation to sell his oil, and when he did sell it had the right to exact, as part of the consideration for the sale, a promise by the purchaser that he would not sell it at less than a stipulated price. There is nothing either unreasonable or unlawful in the effort by a manufacturer to maintain a standard price for his goods. It is simply a means of securing the legitimate benefits of the reputation which his product may have attained. Contracts similar to the one under discussion have been considered in a number of cases, and have generally been upheld where, as here, they had no tendency to create a monopoly. ( *Fowle* v. *Park,* 131 U. S. 88, [9 Sup. Ct. 658] ; *Bement* v. *National Harrow Co.,* 186 U. S. 70, [22 Sup. Ct. 747] ; *Park & Sons Co.* v. *National Druggists' Association,* 175 N. Y. 1, [96 Am. St. Rep. 578, 67 N. E. 136] ; *Garst* v. *Harris,* 177 Mass. 72, [58 N. E. 174] ; *Dr. Miles Med. Co.* v. *Goldthwaite,* 133 Fed. 794; *Dr. Miles Med. Co.* v. *Platt,* 142 Fed. 606; *Dr. Miles Med. Co.* v. *Haynes Drug Co.,* 149 Fed. 838; *Walsh* v. *Dwight,* 40 App. Div. 513, [58 N. Y. Supp. 91].) Many of these decisions, it is true, deal with contracts concerning the sale of patented or proprietary articles, and are based, to some extent, upon the principle that a monopoly right is inherent in a patent or in an article produced according to a formula known only to its manufacturer. It has been questioned whether the fact that an article is produced under a secret formula is of any importance in determining the validity of contracts regulating its sale. (*Hartman* v. *John D. Park & Sons Co.,* 145 Fed. 358; s. c., on appeal, *John D. Park & Sons Co.* v. *Hartman,* 153 Fed. 24, [82 C. C. A. 158].) However this may be, we are cited to no case which holds that a contract like the one at bar is invalid as between the parties to it, whether it deals with an article produced under patent or secret formula or one that may be produced by any one.

The tendency of the modern decisions has been to view with greater liberality contracts claimed to be in restraint of trade. It is not every limitation on absolute freedom of dealing that is prohibited. As is said by the supreme court of the United States in *Gibbs v. Consolidated Gas Co.*, 130 U. S. 396, 409, [9 Sup. Ct. 553, 557]. 'Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other requires, the contract may be sustained.. The question is whether, under the particular circumstances of the case, and the nature of the particular contract involved in it, the contract is, or is not, unreasonable.' So, in *People's Gas Light Co. v. Chicago Gas Light Co.*, 20 Ill. App. 492, the court says: 'The tendency of the courts is to regard contracts in partial restraint of competition with less disfavor than formerly, and the strictness of the ancient rule has been greatly modified by the modern decisions.' Many decisions announcing views similar to those declared in these quotations are cited with approval by this court in *Herriman* v. *Menzies*, 115 Cal. 16, [56 Am. St. Rep. 81, 44 Pac. 660, 46 Pac. 730], and it must be taken to be settled that the sections of the Civil Code, sections 1673, 1674, 1675, relating to contracts in restraint of trade are to be construed in the light of these principles. (*Herriman* v. *Menzies*, 115 Cal. 16, [56 Am. St. Rep. 81, 44 Pac. 660, 46 Pac. 730].) In *Smith* v. *San Francisco & N. P. Ry. Co.*, 115 Cal. 584, 604, [56 Am St. Rep. 119, 47 Pac. 582, 589], this court said, 'The rule invalidating contracts in restraint of trade does not include every contract of an individual by which his right to dispose of his property is limited or restrained. Section 1673 of the Civil Code makes void every contract by which one is restrained from "exercising a lawful profession, trade, or business," except in certain instances. But this is far different from a contract limiting his right to dispose of a particular piece of property, except upon certain conditions. As the owner of property has the right to withhold it from sale, he can also, at the time of its sale, impose conditions upon its use without violating any rule of public policy . . . '

"The necessary result of what we have said is that the complaint must be held sufficient. It is alleged that the defendant bought oil under an express agreement that he would not sell it at less than given prices and that he had sold and threat-

ened to sell it at less than such prices. This is a violation of plaintiff's rights under his contract. Whether this contract could be enforced against persons who might come into possession of plaintiff's oil, with notice of the restriction imposed by him on its sale, but without having made any direct agreement to respect such restriction, is a question not here presented. (See *Garst* v. *Hall & Lyon Co.*, 179 Mass. 589, [61 N. E. 219].)"

The rehearing was ordered to enable the court to give further consideration to the views of the United States circuit court of appeals for the sixth circuit, as declared in *Park & Sons Co.* v. *Hartman*, 153 Fed. 24, [82 C. C. A. 158], and restated in *Miles Med. Co.* v. *Park & Sons Co.*, 164 Fed. 803, [90 C. C. A. 579]. Judge Lurton was the author of each of these opinions. The first contains a very elaborate and learned discussion of the law governing some of the questions involved.

It may be said that neither of these cases involved the question here presented, i. e. the enforceability, as between the parties, of a contract of the kind here shown. The corporation complainant in each instance sought to obtain relief against persons who had entered into no contractual relation with it. It must, however, be confessed that the views there expressed upon the general question of the validity of a system of contracts like that here involved is opposed to what was declared by us in our opinion. Most of the cases cited by us in our opinion heretofore filed are reviewed by Judge Lurton in *Park* v. *Hartman* and are either disapproved or sought to be distinguished. It does not appear to us, however, that the attempt to distinguish has in all instances been entirely successful, and notwithstanding the great respect entertained by us for so able and learned a court as that which decided the cases of *Park* v. *Hartman* and *Miles* v. *Park*, we must remain of the opinion that the conclusion there reached, so far as it is applicable to the case before us, is contrary to the weight of authority.

In our former opinion something was said about the effect upon this litigation of the so-called Cartwright Act (Stats. 1907, p. 984) which had been enacted after the date of this appeal. That statute has recently been amended. (Stats. 1909, p. 593.) The constitutionality of the amending act is not here questioned, nor is it suggested that the contract relied

on appears, on the face of the complaint, to be obnoxious to the terms of the law as it now stands. Whether or not a defense to the action. could be based on the Cartwright Act is a question not now before us. At the present time, and on the record and argument here presented, there is no occasion to discuss the construction or applicability of the statute.

The judgment is reversed, with directions to the superior court to overrule the demurrer, granting leave to the defendant to answer.

Beatty, C. J., dissented.