[S. F. No. 5882.   In Bank.—December 16, 1912.]

## D. GHIRARDELLI COMPANY (a Corporation), Respondent v. JEREMIAH E. HUNSICKER and FRITZ ERNST, Copartners, etc., Appellants.

SALE OF MANUFACTURED PRODUCT—LIMITATION ON MINIMUM SELLING PRICE—PRODUCT SOLD CONSTITUTING ONLY SMALL PART OF MARKET SUPPLY.—A manufacturer of ground chocolate, whose total output constitutes only a small part of the general market supply of that article, may impose, as a condition of an original sale thereof to a wholesale jobber, a limitation on the minimum price at which the same may be resold at either wholesale or at retail. It is immaterial to the validity of such condition whether or not the product is manufactured in accordance with a secret process, or is protected by trademark, or is covered by letters patent.

ID.—RESALE BY ORIGINAL PURCHASER—AGREEMENT OF SECOND PURCHASER TO MAINTAIN PRICES—ENFORCEMENT BY PURCHASER.—Such a condition is enforceable by the manufacturer, not only as against the original purchasing jobber, but also as against a wholesale purchaser from him, who bought, for the purpose of selling again at retail, under a specific agreement with the jobber, which by its terms was made for the express benefit of the manufacturer, whereby he undertook to maintain the fixed retail selling price.

ID.—CONTRACT MADE FOR BENEFIT OF THIRD PERSON.—The contract of the second purchaser is one of the class referred to in section 1559 of the Civil Code, providing that "a contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

ID.—RESTRAINT OF TRADE.—Such an agreement is not unenforceable as being in restraint of trade, either under the common law or the act of Congress of July 2, 1890, known as the Sherman Anti-trust Act.

ID.—REASONABLE PROFIT OF BUSINESS—CARTWRIGHT ACT.—Where it appears that the only object of such agreement was to enable the manufacturer to conduct his business at a reasonable profit, the agreement is not within the prohibitory provision of the so-called Cartwright Act of this state (Stats. 1907, p. 984), as amended in 1909 (Stats. 1909, p. 593).

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Wm. M. Madden, for Appellants.

Henry J. Brodsky, for Respondent.

ANGELLOTTI. J.—This is an appeal from a judgment enjoining defendants from selling or offering to sell a product of plaintiff known as Ghirardelli's ground chocolate, except at prices in direct conformity with the schedule embodied in the notice or label attached to plaintiff's product, which declares the fixed minimum retail price to be thirty cents for one lb. tins and eighty cents for three lb. tins. The judgment was entered upon defendants' failure to answer, after their demurrer to the complaint had been overruled. The demurrer was practically a general demurrer for want of facts suffi-.cient to constitute a cause of action.

The complaint seeking the injunction granted sets forth substantially the case which was presented in *Grogan* v. *Chaffee,* 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745], with the exception that the defendants did not purchase plaintiff's product which they offered to sell and did sell at retail to the public at prices below those fixed by the schedule, from the plaintiff, but from one of the jobbers or wholesale grocers doing business in San Francisco who had purchased from plaintiff, upon the same general conditions on which Chaffee bought olive oil from Grogan in *Grogan* v. *Chaffee,* 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745]. The notice annexed to each box or case of such product sold by plaintiff was the same as the notice affixed by Grogan to each package of his olive oil, except in the specification of the product and price. The notice was as follows:

"Important Notice.

"The goods contained in this case are sold on the *express* condition, made a part of the consideration of the sale, whether same is made by the manufacturer or wholesaler, that the purchaser, if he retails them, will maintain our *fixed retail price* on these goods, and if he wholesales them he will do so subject to the same condition. The acceptance of these goods is an agreement to comply with this condition and a guarantee not to retail them, under any circumstances for less than the established price.

"Our fixed minimum retail price on Ghirardelli's Ground Chocolate for the Pacific Coast is 30c per 1 lb. tins and 80c for 3 lb. tins.

                                "D. GHIRARDELLI COMPANY."

In addition to the allegations contained in the complaint in *Grogan* v. *Chaffee,* 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745], it is alleged that this notice is always brought by plaintiff conspicuously to the attention of the trade, and chocolate is purchased by the jobbers and dealers and all who buy, under and subject to each and all the restrictions; that defendants purchased at wholesale from a jobber or wholesale grocer, for the purpose of selling again at retail, a certain quantity of said chocolate, which bore said notice on each case in a conspicuous place, and of which said notice defendant then and there had full knowledge; that "defendants purchased same under an agreement made at the time of such sale by and between the defendants and the jobber or wholesale grocer hereinbefore referred to, wherein and whereby and by the terms of which and for a valuable consideration, it was understood and agreed that the defendants herein in purchasing the product of plaintiff, to wit, Ghirardelli's Ground Chocolate, did so upon the distinct understanding and agreement that they would maintain the fixed retail selling price, and . . . that at the time said agreement was made and entered into, it was understood and agreed that the same was made for the express benefit of the plaintiff herein and the defendants thereby contracted and agreed that they would not sell said Ghirardelli's Ground Chocolate for less than 30c for 1 lb. tins and 80c for 3 lb. tins."

It is complained that nevertheless defendants are offering for sale and are selling said product for prices below those specified, to the great damage of plaintiff. There are specific averments as to the nature of the damage so caused.

The fact alleged that the product is manufactured, prepared, and packed by plaintiff "in accordance with certain secret processes and formula of its own" is in no way material. Upon this point the reasoning of the supreme court of the United States in *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.,* 220 U. S. 373, [55 L. Ed. 502, 31 Sup. Ct. Rep. 376, 382 and 383], is unanswerable. Nor is the matter of trademark of any importance. "A trademark, or a trade name

or trade dress, have no other effect than to prevent one from 'palming' off his goods for those of another.'' (*Park & Sons Co.* v. *Hartman,* 153 Fed. 24, 28, [12 L. R. A. (N. S.) 135, 82 C. C. A. 158]. See, also, *Garst* v. *Hall,* 179 Mass. 588, [55 L. R. A. 631, 61 N. E. 219].) No infringement of trademark or trade dress is here alleged. It is not alleged that the product is covered by letters patent, so we have no question of the rights conferred by statute upon a patentee of an article. The same was true as to the product involved in *Grogan* v. *Chaffee,* 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745].

In view of the allegations as to the agreement entered into by defendants with the jobber or wholesaler at the time of the purchase of the goods by them, for the express benefit of the plaintiff, the case presented here is practically the same case that was presented in *Grogan* v. *Chaffee*. It appears from the complaint that such wholesaler or jobber had acquired the goods from plaintiff upon the agreement on his part that if he sold the same at wholesale he would do so subject to the same conditions that had been imposed on him as to retail sales. If this was a valid undertaking on his part, he was not only authorized but bound to make such a contract as he is alleged to have made, for plaintiff's benefit, with any person to whom he sold the goods at wholesale. It is positively alleged that he did make such a contract with defendants, and that it was understood and agreed between them that the same was made for the express benefit of plaintiff. So far as appears such agreement was based on a sufficient consideration. No reason is apparent why it can be held that the contract thus alleged is not one of the class referred to in section 1559 of the Civil Code where it is provided that ''a contract made expressly for the benefit of a third person may be enforced by him at any time before the parties thereto rescind it.'' (See *Washer* v. *Independent M. & D. Co.,* 142 Cal. 708, [76 Pac. 654]; *Malone* v. *Crescent City etc. Co.,* 77 Cal. 44, [18 Pac. 858].) If the goods in the hands of the wholesaler or jobber, who had purchased directly from plaintiff, were subject to the conditions we have specified, including the stipulation that if he sold the same at wholesale he would do so subject to the same conditions, the situation presented by the complaint is in all respects substantially the

same as if defendants had purchased directly from plaintiff upon the same terms and conditions as the jobber or wholesale purchaser.   Under these circumstances we are not called upon to consider the question suggested, but not decided in *Grogan* v. *Chaffee*, 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745], whether such a contract between the manufacturer and his immediate vendee could be enforced against persons who might come into possession of plaintiff's product with notice of the restriction imposed by him on its sale, but without having any direct agreement to respect such restriction. (See *Garst* v. *Hall etc. Co.*, 179 Mass. 589, [55 L. R. A. 631, 61 N. E. 219].)   It may be assumed as said in *Park & Sons Co.* v. *Hartman*, 153 Fed. 39, [12 L. R. A. (N. S.) 135, 82 C. C. A. 173], that "the restrictions imposed by complainant upon sales and resales, if valid at all, are only so because they constitute personal contracts upon which an action will lie only against the contracting party."

It was held in *Grogan* v. *Chaffee*, that under the circumstances there appearing, the contract involved was not unenforceable as being in restraint of trade.   Much consideration was given by the court to that question, a rehearing having been granted to give further consideration to the views of the United States circuit court of appeals for the sixth circuit in certain patent medicine cases (153 Fed. 24, [12 L. R. A. (N. S.) 135, 82 C. C. A. 158], and 164 Fed. 803, [90 C. C. A. 579]), and all of the justices of this court except the chief justice and the writer of this opinion concurred in the judgment given and the reasons expressed therefor.   Since that decision was rendered, the supreme court of the United States has decided *Dr. Miles Medical Co.* v. *Park & Sons Co.*, being the same case reported in 164 Fed. 803, [90 C. C. A. 579], affirming the judgment of the circuit court of appeals, 220 U. S. 373, [55 L. Ed. 502, 31 Sup. Ct. Rep. 376].   It may be conceded that in this case contracts of the manufacturer of certain proprietary medicines with his vendees, designed to fix the retail price of such product, of which he was the sole manufacturer, were held to be void as being in undue restraint of trade both under the common law and the act of Congress of July 2, 1890, 26 Stats. 209, [U. S. Comp. Stats. 1901, p. 3200, 7 Fed. Stats. Ann. 336], (the Sherman Antitrust Act), although as suggested in the opinion in *Grogan*

v. *Chaffee*, 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745], it appears to us that neither this case nor the case of *Park* v. *Hartman*, 153 Fed. 24, [12 L. R. A. (N. S.) 135, 82 C. C. A. 158], "involved the question here presented, i. e., the enforceability, as between the parties, of a contract of the kind here shown." But we think there is a distinction between these cases and the case at bar and *Grogan* v. *Chaffee*, in at least one respect material to the question under consideration. In each of the federal cases, the contract involved the *whole* of a certain product, in one case the product being a certain well-known proprietary medicine named "Peruna," and in the other case the product consisting of certain well-known proprietary medicines. The opinion of Mr. Justice Lurton (then circuit judge) in *Park* v. *Hartman*, 153 Fed. 24, [12 L. R. A. (N. S.) 135, 82 C. C. A. 158], quoted in part by the United States supreme court in *Dr. Miles etc. Co.* v. *Park etc. Co.*, 220 U. S. 373, [55 L. Ed. 502, 31 Sup. Ct. Rep. 376], shows the effect of the contracts involved in that case to be the absolute prevention of any competition in respect to prices between retailers who supplied the public with the product named, amounting to a complete restraint as to "Peruna" generally. The learned judge was here talking of a case where the whole supply of the article on the market, by whomsoever manufactured, was involved, for he said: "It is true that the complainant is not in a combination with other makers of 'Peruna.' There are no others. If there were, there would not be a complete or general restraint; for it might then happen that these others, not being bound by any covenants, could supply the public. If the supply to come from them was adequate for the public demand, the public might be in no wise affected. Now, if the complainant had absorbed all the sources from which the demand for lumber, or furniture, or stoves could be supplied, and then should say, 'I will sell only to those who will resell only to those I shall license to buy and only at the price I dictate,' could any voice be raised to say that the covenants which every dealer should sign in order to prevent exclusion from trade in such articles, would be upheld by the courts?" *Grogan* v. *Chaffee*, 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745], did not involve a contract affecting the whole or even any large proportion of the supply of olive oil available in the market.

This feature was expressly recognized by the court in discussing the question of attempted monopoly and unreasonable restraint of trade. It was said: "The contract here relied on does not relate to any olive oil except that manufactured by plaintiff. There is no suggestion that this comprises all, or any large portion, of the olive oil manufactured or sold in the market supplied by plaintiff. While plaintiff alleges that he manufactures oil by a process of his own discovery, there is nothing exclusive in the product resulting from this process. All that he claims for his oil is that it is pure and wholesome. The court must assume, as a matter of common knowledge, that others may and do manufacture pure olive oil in considerable quantities." The same is substantially true of plaintiff's ground chocolate. That it comes anywhere near controlling the market in ground chocolate is not suggested, and as a matter of common knowledge we do know that others may and do manufacture and sell such chocolate in considerable quantities. Plaintiff simply claims to be producing a superior quality of ground chocolate. This feature, common to this case and that of *Grogan* v. *Chaffee,* which was taken by the federal courts to be absent from the cases decided by them which we have referred to, is a most material matter in the determination of the question whether such restraint of trade as results from the contract, is such as to render the contract void as imposing an unreasonable restraint. It is expressly recognized by the supreme court of the United States, in *Dr. Miles Medical Co.* v. *Parks,* 220 U. S. 373, [55 L. Ed. 502, 31 Sup. Ct. Rep. 376], that the mere fact that some restraint results does not render the contract void. It was said by the court, through Mr. Justice Hughes: "With respect to contracts in restraint of trade, the earlier doctrine of the common law has been substantially modified in adaptation to modern conditions. But the public interest is still the first consideration. To sustain the restraint, it must be found to be reasonable both with respect to the public and to the parties, and that it is limited to what is fairly necessary, in the circumstances of the particular case, for the protection of the covenantee. Otherwise restraints of trade are void as against public policy. . . . Public welfare is first considered, and if it be not involved, and the restraint upon one party is not greater than protection to the other party requires, the

contract may be sustained. The question is whether, under the particular circumstances of the case and the nature of the particular contract involved in it, the contract is, or is not, unreasonable. (Citing cases.)'' The opinion of Mr. Justice Lurton in *Park & Sons* v. *Hartman,* 153 Fed. 24, [12 L. R. A. (N. S.) 135, 82 C. C. A. 158], indicates that he would uphold such a covenant as is here involved where it is ''no more than necessary to afford a fair protection to the business of the complainant and not so large as to interfere with the interests of the public.'' He further said: ''There can be no hard and fast rule by which the result can be reached in such cases. At last the question must come to this: 'What is a reasonable restraint with reference to a particular case?''' We do not think that the federal cases relied on should be construed as holding that such contracts as are involved in *Grogan* v. *Chaffee,* and in this case, are, under such circumstances as appear in these cases, unenforceable as being in restraint of trade, either under the common law, or the act of Congress known as the Sherman Anti-trust Act. Of course we are not in this case concerned with any question of interstate commerce, so that any question as to the effect of that act is not involved    We see no reason for modifying the rules expressed in *Grogan* v. *Chaffee,* 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745], upon the question there decided.

It is urged that the agreement here sought to be enforced is within the prohibitory provisions of the so-called Cartwright Act of this state enacted in 1907 (Stats. 1907, p. 984), as amended in 1909 (Stats. 1909, p. 593). This is a question not decided in *Grogan* v. *Chaffee,* 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745]. It may be conceded purely for the purposes of this decision that the agreement was contrary to the policy of that law (Civ. Code, sec. 1667, subd. 2), as such law existed prior to the amendment of 1909. So conceding, it is clear that the proviso annexed by such amendment to section 1 of the act, the section defining the various kinds of combinations constituting a trust within the meaning of the act, and the only section upon which reliance can be based for a claim that the contract here involved is opposed to the policy of such act, entirely answers the contention of defendants. That proviso, so far as material here, is: ''pro-

vided that no agreement, combination or association shall be deemed to be unlawful or within the provisions of this act, the object and business of which are to conduct its operations at a reasonable profit.'' The complaint here sufficiently shows that such was the only object of plaintiff in the matter of the agreement herein involved.

It is not urged that the complaint does not sufficiently show that the conditions imposed were necessary to afford a fair protection to plaintiff's business. In fact, the only points made in defendants' brief against the judgment are those we have discussed.

The judgment is affirmed.

Sloss, J., Shaw, J., Melvin, J., Henshaw, J., and Lorigan, J., concurred.