[Civ. No. 1349. Third Appellate District.—October 26, 1915.]

## HARRY MUNTER, Appellant, v. EASTMAN KODAK COMPANY, (a Corporation), Respondent.

CARTWRIGHT ANTI-TRUST LAW—ACTION FOR DAMAGES—REFUSAL TO SELL GOODS—PLEADING—INSUFFICIENT COMPLAINT.—A complaint in an action for damages based upon the provisions of section 11 of the Cartwright anti-trust law (Stats. 1907, pp. 984, 987), fails to state a cause of action, where the gist of the charge against the defendant is that it is the owner or in control of a large number of different establishments engaged in the manufacture and sale as a wholesaler of certain articles mentioned in the complaint, and that it has refused to sell any of its goods to plaintiff at the prices at which and upon the conditions upon which it sees fit to sell the same kind of articles or goods to other retail dealers.

ID.—DAMAGE—ESSENTIAL TO SHOW.—While in a criminal prosecution against persons for maintaining a trust or combination in restraint of commerce or trade, the gist of the offense is in the formation and maintenance of such trust or combination, and the fact of the existence of the combination for the purpose of doing some prohibited act is all that need be proved to support and sustain the charge, yet, in a civil action for damages based upon the Cartwright anti-trust law, it is incumbent upon the complaining party, not only to allege and prove the existence of an unlawful trust and combination, but also to allege and prove that his business or property has been injured by the very fact of the existence and prosecution of such unlawful trust or combination.

ID.—BUSINESS COMBINATION—WHEN UNLAWFUL—MONOPOLY.—There is no violation of the statute in the mere act of a person purchasing or otherwise securing control of a number of different concerns engaged in the business of manufacturing and selling the same article or commodity, and the control by one person or corporation of a number of other concerns engaged in its line of business can only become unlawful when the effect of such combination is to establish and foster a monopoly which affects or injures the public welfare.

ID.—FIXING OF PRICES OF MANUFACTURED GOODS—SELECTION OF CUSTOMERS—RIGHT OF MANUFACTURER.—A manufacturer or wholesaler has not only the right to fix the prices for his goods, but he has the right to establish the prices at which such goods shall be sold by retailers, so long as such acts are not the direct effect or result of a combination formed and maintained by him and others to create restrictions in trade or commerce; and he has also the right

to select his own customers, and to sell at higher prices to one than to another, provided that such discrimination is not the result of a combination, agreement, or conspiracy between him and others to monopolize or restrict trade or commerce or to prevent legitimate competition.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

James L. Nagle, for Appellant.

Samuel Knight, for Respondent.

HART, J.—The defendant demurred to the second amended complaint in this action on both general and special grounds and the same was allowed, without leave to amend. Thereupon judgment was entered in favor of the defendant.

From the judgment so entered, the plaintiff prosecutes this appeal.

The action is for damages and purports to be based upon the provisions of section 11 of the so-called Cartwright antitrust law. (Stats. 1907, pp. 984, 987.) Said section reads as follows:

"In addition to the criminal and civil penalties herein provided, any person who shall be injured in his person or property by any other person or corporation or association or partnership, by reason of anything forbidden or declared to be unlawful by this act, may sue therefor in any court having jurisdiction thereof in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and to recover two-fold the damages by him sustained, and the costs of suit. Whenever it shall appear to the court before which any proceedings under this act may be pending, that the ends of justice require that other parties shall be brought before the court, the court may cause them to be made parties defendant and summoned, whether they reside in the county where such action is pending, or not."

The defendant, a corporation, is and had been for some time prior to the commencement of this action engaged, in the city of San Francisco, in the business of wholesale dealing in

photographic supplies, kodaks, cameras, and the usual or essential equipments thereof.

The plaintiff was for more than two years prior to the seventeenth day of January, 1911, (the alleged time at which the alleged cause of action against the defendant accrued to the plaintiff) engaged at No. 716 Clement Street, in the said city of San Francisco, in the business of selling, exclusively at retail, "kodaks, cameras, photographers' supplies and other articles furnished and supplied exclusively by defendant to the dealers in said goods."

The complaint in substance alleges: That the defendant, as a wholesale dealer, has at all times mentioned in the complaint furnished and "continues to furnish" to the trade in the city of San Francisco and elsewhere the articles above mentioned at a certain trade discount to enable the retail dealers "to carry on the said business and annually issued a circular in which they fixed the price at which various dealers (retail) could sell the said articles"; that (upon information and belief) there are certain retail dealers to whom the defendant will sell said articles "at what the defendant terms 'dealer rates' under and by virtue of an agreement between said defendant and said dealers, and refuses to sell to any other person, although engaged in the business of dealers, unless the said defendant recognizes the said dealer as a dealer and refuses to said dealer the trade discount granted to other dealers in the same general business of dealers in said articles." It is further alleged that the defendant has made and entered into an agreement with dealers to whom it furnishes and sells said articles whereby the latter "bound themselves for one year, commencing on the 1st day of January, 1911, not to sell or dispose of said articles to any person engaged in said business as a retail dealer but the person who was as such dealer recognized by the defendant as a retail purchaser and not as a dealer and did agree and combine to pool and directly and indirectly did unite their said several interests so that the price that they should secure said articles for, and which were to be furnished by said defendant, and the companies, persons and associations under the defendant's control would be cheaper and less so that they could, as dealers, sell to the general public, and in pursuance of said conspiracy and combination the said plaintiff was prevented from obtaining said articles herein alleged on

dealers' terms and prices''; that the defendant, for the purpose of obtaining the exclusive privilege of supplying the dealers of the city of San Francisco and elsewhere with the said articles and so controlling the market with respect thereto has, ''by means of purchase and otherwise, obtained control of a large number of corporations, copartnerships, and other associations engaged in the manufacture of said articles so that persons engaged in the purchase and sale of said articles to the general public cannot obtain the said articles from any other person than defendant, and said dealer, in order to obtain said articles at a trade discount, the same as other dealers, must be first recognized by the said defendant.''

It is averred that, up to the seventeenth day of January, 1911, the plaintiff was known to and recognized by the defendant as a retail dealer in kodaks, cameras, and photographers' supplies, and up to said date sold said articles to the plaintiff, as a retail dealer, at a trade discount, ''so that he could again sell the same to the general public at the retail price fixed by the said defendant in the aforesaid annual circular''; that up to the time mentioned the plaintiff could as a retail dealer purchase said articles from the defendant or any of the corporations, companies, and manufactories owned and controlled by it; that, on the said seventeenth day of January, 1911, the defendant, ''unlawfully, fraudulently, and knowingly, for the purpose of injuring, depriving, cheating and defrauding plaintiff of said business, notified plaintiff that it would refuse to sell, to deal any longer with, or recognize plaintiff as a dealer in the said articles and goods, and refused to sell to him at the prices with a trade discount for which they sell to other dealers in the city of San Francisco or to recognize plaintiff as a retail dealer in said goods or allow the plaintiff to order from them or purchase at prices for which they sold the same articles to other dealers at retail''; that the plaintiff, since said date, has been unable to purchase as a retail dealer any of the articles or goods mentioned from the defendant; that the defendant has by means of threats ''and other acts'' prevented other companies it controls from selling the said articles or goods to the plaintiff at the prices at which the defendant and its confederates sell the same goods to the different dealers recognized by them in the city of San Fran-

cisco, "and has compelled said dealers to aid and assist them in preventing the plaintiff from obtaining or purchasing said articles or goods from any of them under the penalty of refusing to receive any further orders from them as dealers or to recognize or deal with them as dealers or to sell to them at the prices sold to dealers recognized by them."

It is further alleged that the plaintiff, on the seventeenth day of January, 1911, had on hand or in stock and undisposed of a large quantity of the said goods and articles which he had previously purchased from the defendant, the latter then recognizing him as a dealer, and that said stock was of the value of eight hundred dollars, "which in ordinary course of trade would sell at retail for the sum of $1200.00, providing the plaintiff should be treated as a dealer by defendant and permitted thereafter to purchase at a trade discount"; that the plaintiff, having been engaged in the said business for a great number of years, had established a large and lucrative business from which he derived a profit of $3.50 per day, and that in building up said business he had expended a large sum of money and became widely known as a dealer in the goods and articles "of the defendant and its many confederates aforesaid, all of which was well known to the defendant, and the good-will on said day was of the value of $1,200.00." The plaintiff further declares that he would not have engaged in said business of handling the defendant's goods "but for the false and deceitful pretenses of said defendant that it would recognize the plaintiff as theretofore as a dealer and would treat him as such and permit the purchase of said articles and goods as such dealer for the purpose of sale, the same as other dealers."

The complaint proceeds: "That in the terms of sale issued to retail dealers in the defendant's goods and articles, all goods are sold to dealers at dealers' rates, upon the express condition that they may be resold in strict accordance with the conditions set forth in the notice of terms of sale and among the said conditions was that said dealers could not sell to any person for a price less than the retail prices fixed by defendant."

The demurrer was properly sustained.

While, in a criminal prosecution against persons for maintaining a trust or combination in restraint of commerce or trade, the gist of the offense is in the formation and mainte-

nance of such trust or combination, and the fact of the existence of the combination for the purpose of doing some prohibited act is all that need be proved to support and sustain the charge, yet, in a civil action for damages based upon our anti-trust statute, it is incumbent upon the complaining party, not only to allege and prove the existence of an unlawful trust or combination but also to allege and prove that his business or property has been injured by the very fact of the existence and prosecution of such unlawful trust or combination. Or, as was said by this court in *Krigbaum* v. *Sbarbaro*, 23 Cal. App. 427, 433, [138 Pac. 364]: "To be 'injured in business or property,' within the contemplation of said law, as we understand it, is where the injury has *directly* resulted from the fact of the existence of the trust— that is to say, where the business or property has directly sustained injury solely by reason of the restrictions in trade or commerce which are fostered by such trust or combination. In other words, while one whose business or property has been injured solely because of the restrictions in trade carried out by a trust organized and maintained for that purpose may maintain an action under the provisions of the anti-trust law for double the damages he has actually suffered from the injury so inflicted, yet he could not maintain an action based upon said law if the injury, although directly the result of the wrongful acts of the trust or the constituent members thereof, did not arise by reason of the restrictions in trade or commerce carried out by such trust or combination."

It must at once become manifest, upon reading the complaint in this action, that, boiling its averments down to their simplest statement, the limit of the intendments thereof does not extend beyond the mere assertion of a claim that the defendant, for some reason not divulged by that pleading, refused to recognize the plaintiff as a retail dealer within the purview of the terms and conditions of its annual circular and so has refused to sell to him its goods and wares.

There is, as will readily be noted, no statement in the complaint that a combination has been formed and is being maintained by and between the defendant and its alleged allied companies to create or carry out restrictions in trade or commerce," (Stats. 1907, p. 984, sec. 1, subd. 1) ; or "to limit or reduce the production, or increase or reduce the price of mer-

chandise or of any commodity'' (Id., subd. 2) ; or ''to prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity'' (Id., subd. 3) ; or ''to fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in the state'' (Id., subd. 4) ; or to violate any of the provisions of subdivision 5 of section 1 of said act.

There is no averment from which it may be concluded or even inferred that the prices at which the defendant and others connected with it sell the articles named to retail dealers or the prices at which the defendant requires the retail dealers to sell said goods to the public are in excess of what ought to afford only a fair and reasonable return or profit on the manufacture and retail sale of the same, and consequently there is a failure to disclose that the public is or will be injured by the prices so fixed.

There is no violation of the statute in the mere act of a person purchasing or otherwise securing control of a number of different concerns engaged in the business of manufacturing and selling the same article or commodity. The control by one person or corporation of a number of other concerns engaged in its line of business can only become unlawful when the effect of such combination is to establish and foster a monopoly which affects or injures the public welfare. In other words, the statute against predatory trusts or business combinations is violated only where a combination has been formed and is maintained for the purpose and having the effect of creating and fostering restrictions in trade or commerce or preventing legitimate competition in the manufacture and sale or purchase of merchandise, produce, or any commodity. No such combination is charged in the complaint. As before stated, the gist of the charge against the defendant is that it is the owner or in control of a number of different establishments engaged in the manufacture and the sale as a wholesaler of the articles mentioned and that it has refused to sell any of its goods and wares to the plaintiff at the prices at which and upon the conditions upon which it sees fit to sell the same kind of articles or goods to other retail dealers.

The defendant not only has the right to fix its own prices as a manufacturer or wholesaler, but also the right to establish the prices at which its goods are to be sold by retail dealers therein to whom it sells such goods for retail sale, so long as those acts are not the direct effect or result of a combination formed and maintained by it and others to create restrictions in trade or commerce, or, in short, to maintain a monopoly of the trade, and, as stated, nowhere does the complaint directly declare that this was the fact here. The defendant has the further right to sell its goods to whomsoever it pleases and to refuse to sell to particular persons. In other words, it was and is within its legitimate province as a manufacturer and wholesale vendor to select its own customers, and, moreover, to sell at higher prices to one than to another, provided, of course, that such discrimination in prices is not the result of a combination, agreement, or conspiracy between it and others, the object of which was or is to monopolize or restrict trade or commerce or to prevent legitimate competition, or otherwise to injure the public, the protection of whose welfare is the first consideration of all anti-trust legislation.    (*Grogan* v. *Chaffee,* 156 Cal. 611, [27 L. R. A. (N. S.) 395, 105 Pac. 745] ; *D. Ghirardelli Co.* v. *Hunsicker,* 164 Cal. 355, [128 Pac. 1041] ; *Whitwell* v. *Continental Tobacco Co.,* 125 Fed. 454, .[60 C. C. A. 290, 64 L. R. A. 689] ; *Union Pacific Coal Co.* v. *United States,* 173 Fed. 737, [97 C. C. A. 578].)

In *Grogan* v. *Chaffee,* it is said : ''There is nothing either unreasonable or unlawful in the effort by a manufacturer to maintain a standard price for his goods.   It is simply a means of securing the legitimate benefits of the reputation which his product may have attained.''    Again, the court in that case said : ''It is not every limitation on absolute freedom of dealing that is prohibited, and it is the tendency of the modern decisions to view with greater liberality contracts claimed to be in restraint of trade.''

The Continental Tobacco case, above cited, involved an action wherein the plaintiff sued for damages under the provisions of the federal anti-trust law.   It was alleged in the complaint that the defendant, Tobacco Company, and its agent had refused to sell to or supply the plaintiff with the goods of the company at as low a figure as it sold to others and that the result was that he was forced out of business.    The

federal court, affirming the judgment entered upon an order by the court below sustaining a demurrer to the complaint, said: "The tobacco company and its employee sold its products to customers who refrained from dealing in the goods of its competitors at prices which rendered their purchases profitable. But there was no restriction upon competition here, because this act left the rivals of the tobacco company free to sell their competing commodities to all other purchasers than those who bought of the defendants, and free to compete for sales to the customers of the tobacco company by offering to them goods at lower prices or on better terms than they secured from that company. The tobacco company and its employee were not required, like competitors engaged in public or *quasi* public service, to sell to all applicants who sought to buy, or to sell to all intending purchasers at the same prices. They had the right to select their customers, to sell and to refuse to sell to whomsoever they chose, and to fix different prices for sales of the same commodities to different persons. In the exercise of this right they selected those persons who would refrain from handling the goods of their competitors as their customers, by selling their products to them at lower prices than they offered them to others. There was nothing in this selection, or in the means employed to effect it, that was either illegal or immoral."

In the case of *Union Pacific Coal Co.* v. *United States,* 173 Fed. 737, [97 C. C. A. 578], the defendant was prosecuted for the violation of the federal anti-trust act, the gist of the indictment being that the defendant with other defendants named in the indictment had combined to force one Sharp, a retail dealer in coal, and a purchaser of that article from the defendant, coal company, out of business by refusing to sell and transport to him any of the coal mined by said company. The court held that the evidence did not show a combination, and, among other things, said: "The gist of the offense charged in the indictment was not the refusal of the coal company and Moore to sell coal on the purchaser's terms, or of the railroad companies and Buckingham to transport it. It was the combination so to do, and if there was no combination there was no offense. There was no law which forbade the coal company to prescribe the terms on which it would sell its product to Sharp, or to any other purchaser. There was no law which required the coal company to sell its coal

to Sharp on the terms which he prescribed, or to sell it to him at all. It had the undoubted right to refuse to sell its coal at any price. It had the right to fix the prices and the terms on which it would sell it, to select its customers, to sell to some and to refuse to sell to others, to sell to some at one price and on one set of terms and to sell to others at another price and on a different set of terms. There is nothing in the act of July 2, 1890, which deprived the coal company of any of these common rights of the owners and vendors of merchandise, and if it did not combine with some other person or persons so to do its refusal to sell its coal to Sharp unless he would withdraw his advertisement of a reduction in his retail price of it was not a violation of the Sherman Antitrust Act charged in the indictment. (*Morris Run Coal Co.* v. *Barclay Coal Co.,* 68 Pa. 173, [8 Am. Rep. 159]; *Whitwell* v. *Continental Tobacco Co.,* 125 Fed. 454, 460, 461, 463, [60 C. C. A. 290, 296, 297, 299, 64 L. R. A. 689]; 1 Eddy on Combinations, sec. 292; *Allgeyer* v. *Louisiana,* 165 U. S. 427, 578, 589, 17 Sup. Ct. Rep. 427, 41 L. Ed. 832]; *In re Greene,* [C. C.], 52 Fed. 104, 115; *In re Grice,* [C. C.], 79 Fed. 627, 644; *Walsh* v. *Dwight,* 40 App. Div. 513, [58 N. Y. Supp. 91, 93]; *Brown* v. *Rounsavell,* 78 Ill. 589.)''

Thus it is clear that the defendant was entirely within its rights in fixing reasonable terms and conditions upon which alone the retail trade might handle its goods. There is nothing in the complaint which indicates or tends to disclose that the terms and conditions established and published by the defendant were or are unreasonable or, as before stated, that their effect is or will be to create restrictions in trade or commerce or of preventing or in any way circumventing free and unhampered competition to the detriment of the public. And it may with no impropriety be further suggested in this connection that the complaint does not show that the plaintiff was willing or able to accept and abide by those terms and conditions.

It is clear to our minds that the complaint utterly fails to make out a case of injury to property or business under the provisions of the state anti-trust act. In other words, it is plain that the plaintiff has not by the averments of his complaint shown that the defendant by the acts alleged against it has violated the inhibitions against the maintenance of

trusts or combinations whose object is to restrict trade or commerce or to destroy legitimate competition within the meaning and intent of the so-called Cartwright anti-trust law.

The judgment is affirmed.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.