[Civ. No. 11135. First Appellate District, Division One.—September 30, 1940.]

UNIVERSAL CREDIT COMPANY (a Corporation), Appellant, v. M. C. GALE, INC. (a Corporation), et al., Defendants; FIDELITY ACCEPTANCE COMPANY (a Corporation), Third Party Claimant and Respondent.

Robert G. Partridge and Wallace O'Connell for Appellant.

Clark, Nichols & Eltse for Respondent.

KNIGHT, J.—This is an appeal by an attaching creditor from a judgment entered in favor of a third party claimant, in a proceeding had under the provisions of section 689 of the Code of Civil Procedure to determine title to three new Ford automobiles which had been attached by the Universal Credit Company in an action brought against M. C. Gale, Inc., an authorized Ford dealer, M. C. Gale as an individual, and several fictitious defendants, on a common count for money had and received.

 The Fidelity Acceptance Company was the third party claimant, and at the time the automobiles were attached they were on display in the salesroom of the Gale corporation in Oakland. The Acceptance company had financed the purchase thereof from the Ford company at Richmond for M. C. Gale personally, and thereupon sold them to him on conditional sales contracts which were executed prior to the delivery of the cars to Gale, whereunder as seller the Acceptance company retained title until full payment therefor was made; and at the time the attachment was levied the cars stood registered with the state motor vehicle department in the name of the Acceptance company as legal owner. It was principally upon the foregoing facts, which are not disputed, that the trial court awarded judgment in favor of the Acceptance company that at the time of the attachment

it was the legal owner of said cars and entitled to the possession thereof.

In effect the ground of appeal is an attack upon the validity of the conditional sales contracts. In this behalf it is contended that at the time of the purchase of the cars from the Ford company, title thereto passed to Gale and not to the respondent Acceptance company, and that in the absence of a valid title ''Respondent's interest in the vehicles involved was purely a chattel mortgage, void as against appellant'' for the reason that it covered stock in trade of a merchant (Civ. Code, sec. 2955, subd. 3) and was not acknowledged or recorded (Civ. Code, sec. 2957; Vehicle Code, secs. 195–198).

We agree with the trial court's conclusion that title passed from the Ford company to respondent. Among the facts established by the evidence relating to this issue are the following: The Ford company operated under a business rule of selling cars to its dealers for cash, which it required to be paid prior to or at the time of the delivery of the cars purchased. Neither the Gale corporation nor Gale had the cash or credit standing to obtain the necessary amount to comply with the Ford company's business rule; whereupon Gale, the president and manager of the Gale corporation, made arrangements with the respondent Acceptance company whereby respondent would purchase the cars from the Ford company and then as owner thereof sell them to Gale personally on conditional sales contracts, retaining title until the amounts due thereunder were fully paid. The reason this arrangement was made by respondent with Gale personally was that some two years prior to this transaction respondent had engaged in certain business dealings with the corporation, at which time the corporation was found to be in an unsatisfactory financial condition. After having completed the arrangements with respondent, Gale phoned the Ford company at its plant in Richmond, and notified a Mr. Lutz, the executive in charge of this particular department of the company's business, that respondent was to be the buyer of the cars and was putting up the money to pay for them. Gale's testimony in this regard was in part as follows: ''I told them that the Fidelity Acceptance Corporation was going to buy the cars for me and would send their check out. . . . Q. Did you tell them that the Fidelity Company was putting up the money? A. Yes. Q. And buying them

for you? A. Yes, I told Mr. Lutz. . . . The Court: Is Mr. Lutz the car distributor? A. He is the Chief Clerk and he has to okay the method of payment." Thereupon Gale placed the order for the cars and obtained the motor numbers of the particular ones to be delivered. Immediately following Gale's phone conversation with Lutz, conditional sales contracts were prepared and executed by respondent and Gale, wherein respondent as "seller" sold to Gale as "buyer" the automobiles bearing the motor numbers so obtained by Gale from Lutz, and which in terms, among other things, provided: "Title to said property shall remain in seller or his assigns until all payments herein provided for are made. . . ." Respondent then drew its checks for the payment of the cars, which were made payable to the Ford company; and the Ford company then delivered the cars to the place of business of M. C. Gale, Inc., and received in payment respondent's checks. The cars were invoiced to Gale, who upon delivery of each car registered the same with the department of motor vehicles in respondent's name as legal owner. Two of the registration certificates so designating it as legal owner were received prior to the attachment. The third certificate was received in the same form, shortly after the attachment was levied.

It would seem from the foregoing that respondent adopted every course available to take and retain title in itself to said cars. As was said in *Pacific Finance Corp.* v. *Bank of Yolo,* 215 Cal. 357 [10 Pac. (2d) 68], it "meticulously followed a system designed to vest in it directly from the shipper, the title to the goods, the object of this conduct being to prevent the claim that it held them merely as security". And Gale's good faith in the transaction was shown by having registered the cars with the motor vehicle department immediately after delivery in respondent's name as legal owner. Moreover, there is nothing in the evidence to indicate that the manner in which the transaction was conducted in any way misled appellant, for the reason that its demand against Gale was founded on a preexisting indebtedness.

In furtherance of its contention that title passed from the Ford company to Gale rather than to respondent, appellant calls attention to the fact that the cars were invoiced to Gale. But no significance of title can be attached

thereto, for it is well settled that standing alone an invoice is not regarded as evidence of title. It is neither a bill of sale nor evidence of a sale, and does not transfer the title, and it is as appropriate to a bailment as to a sale. (33 Cor. Jur., p. 811.) Appellant also points out that no bills of sale or other documents of title were given by the Ford company to respondent; but neither were any given to Gale. In this regard the record shows that it was contrary to the business rules of the Ford company to give any documents of title on sale of its cars. As a matter of fact, the evidence discloses that appellant itself had financed the purchase of many cars from the Ford company at different times and that the transactions were conducted in precisely the same manner as the one here.

Appellant has cited several cases in support of its contention that title passed from the manufacturer direct to the dealer, rather than to respondent; but we do not deem any of them here controlling for the reason that they involved different factual situations. They were cases where the borrower was the owner and in possession of the property which was the subject matter of the conditional sales contract at the time the money was lent and the contract executed.

Even considering the situation from appellant's viewpoint that title passed from the Ford company to Gale rather than to respondent, and that therefore the effect of the conditional sales contracts as such were nullified, we are not prepared to say that the judgment would have been any different for the reason that the legal status of the parties and the circumstances of the transaction were such that apparently respondent would have been protected under the doctrine of the Uniform Trust Receipts Law (Civ. Code, secs. 3012–3016.16) wherein it is declared among other things (Civ. Code, sec. 3014), " . . . The security interest of the entruster [which in the present case would be respondent] may be derived from the trustee [which would be Gale] or from any other person, and by pledge or by transfer of title or otherwise. . . . " Respondent would not come within the exclusionary provision of the second sentence of section 3013, subdivision 3, for the reason that it was not a "person in the business of selling goods for profit", but admittedly was a finance company. Nor would the cases cited and relied upon by appellant herein take the case out of the operation of the

Uniform Trust Receipts Law, because they were decided prior to 1935, the effective date of the operation of said law.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.