HYMAN SCHREIER and Others, Plaintiffs, *v.* WILLIAM SIEGEL, Defendant.

Supreme Court, Special Term, New York County, July 7, 1942.

*Joseph J. Hammer* [*Gerald Dickler* of counsel], for the plaintiffs.
*Edward M. Segal*, for the defendant.

EDER, J. Action to restrain unfair competition brought pursuant to the provisions of the Fair Trade Law of the State of New York (Gen. Business Law, § 369-b), at times referred to as the Feld-Crawford Act. Plaintiffs seek an injunction *pendente lite* restraining the continuance of the practices and violations complained of. Section 369-a permits price fixing of certain commodities.

It is alleged in the complaint that plaintiffs operate licensed pharmacies where they sell at retail, and that defendant is engaged in a like vocation and that the parties litigant are in free and open competition with each other.

It is further alleged that prior to the acts complained of products of manufacturers, distributors and wholesalers of drugs, cosmetics and toilet articles bearing the trade-mark and trade name of the manufacturer, distributor or owner thereof were sold in open and fair competition with products of the same general class produced and sold by others; that pursuant to section 369-a they entered into contracts with retailers in the State of New York which said contracts provide that said retailers would not, directly or indirectly, advertise, offer for sale or sell the respective products of the said manufacturers, distributors and wholesalers, at less than the minimum prices stipulated therein by and between said manufacturers, wholesalers and distributors, and the said retailers respectively; that the defendant was notified of the existence and terms of said contracts and had knowledge thereof prior to the acts complained of and that such acts were committed by the defendant while said contracts were in force, and that they still are in force; that such wrongful acts have been committed between January 28, 1941, and May 6, 1942, and embrace products of forty-four different manufacturers.

The wrongdoing by defendant is not disputed, but defendant interposes as a defense the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901, *et seq.*; Act of Jan. 30, 1942, 55 U. S. Stat. at Large, 23), identified also as Public Law 421, Seventy-Seventh Congress, Second Session.

It is provided by subdivision (d) of section 205 of said act (U. S. Code, tit. 50, Appendix, § 925) as follows: " * * * In any suit or action wherein a party relies for ground of relief or defense upon this Act or any regulation, order, price schedule, requirement, or agreement thereunder, the court having jurisdiction of such suit or action shall certify such fact to the Administrator. The Administrator may intervene in any such suit or action."

On June 24, 1942, this court issued its certificate in conformity with this provision and was advised by notice dated July 1, 1942, that the Price Administrator had received said certificate and did not intend, at the present time, to intervene.

The Emergency Price Control Act is an act passed to further the national defense and security by checking speculative and excessive price rises, price dislocations, and inflationary tendencies, and for other purposes. The bill does not of itself fix any prices but gives to a Price Administrator power to establish ceilings on prices. (See U. S. Code Congressional Serv. No. 1 [1942], p. 80, Congressional Comments.)

The defendant, in addition to interposing this enactment in opposition also relies on the General Maximum Price Regulation, issued by the Price Administrator on April 28, 1942, and generally effective May 11, 1942, which combined, it is asserted, enjoins retailers from selling merchandise at a price higher than that obtained by said retailer in the month of March, 1942. In his brief defendant's counsel says: " The defendant admits selling at prices lower than the prices established by the Fair Trade Regulations."

Subdivision (a) of section 4 of the Emergency Price Control Act (U. S. Code, tit. 50, Appendix, § 904), entitled " Prohibitions," so far as here germane, provides: " It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202 (b) or section 205 (f), or to offer, solicit, attempt, or agree to do any of the foregoing."

Subdivision (d) of section 205 provides: " No person shall be held liable for damages or penalties in any Federal, State, or Territorial court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this Act or any regulation, order, price schedule, requirement, or agreement thereunder, or under any price schedule of the Administrator of the Office of Price Administration or of the Administrator of the Office of Price Administration and Civilian Supply, notwithstanding that subsequently such provision, regulation, order, price schedule, requirement, or agreement may be modified, rescinded or determined to be invalid * * *."

Section 305 (U. S. Code, tit. 50, Appendix, § 945) provides: "No provision of law in force on the date of enactment of this Act shall be construed to authorize any action inconsistent with the provisions and purposes of this Act."

Under the terms of the General Maximum Price Regulation issued by the Office of Price Administration on April 18, 1942, which became effective as to certain retail transactions of commodities on May 18, 1942, the highest prices charged for a commodity during the month of March by any vendor were established as the maximum or " ceiling " prices at which such commodities could thereafter be sold by such seller. From this the defendant advances the premise that he is now placed in the position of being unable to comply with the State Law, as his compliance therewith would force him to violate the Federal enactment and commit a felony under subdivision (b) of section 205 of the act. He, therefore, advances the contention that an order by the Office of Price Administration supersedes all State laws as well as any private contractual relationship between any citizens or State and citizen within the boundaries of the United States.

The defendant's position is also that the two acts conflict in fundamental respects, that the Federal Act is the reverse of the State Statute as it prohibits rises above a certain level and the State Act is designed and intended to prevent prices from dropping below a certain stipulated figure.

On the question of conflict it admits of no doubt that the authority of the Federal government is supreme, and with respect to matters of which it has cognizance perforce authority conferred by the Constitution there can be no conflict of authority between a State law and a law of the United States, the former being ever and always inferior and subordinate to the latter; and this is so also where the field is one of concurrent power; in such a case the State may legislate until such time as the Federal authority may assert itself through an act of Congress.

Thus in *Cummings* v. *Chicago* (188 U. S. 410, 428) the court expounded this principle in the following language: " If the power of the state and that of the Federal Government come in conflict, the latter must control and the former yield. This necessarily follows from the position given by the constitution to legislation in pursuance of it, as the supreme law of the land."

And in *Florida* v. *Mellon* (273 U. S. 12, 17) the court declared: " If the act interferes with the exercise by the State of its full powers of taxation or has the effect of removing property from its reach which otherwise would be within it, that is a contingency which affords no ground for judicial relief. The act is a law of the

United States made in pursuance of the Constitution and, therefore, the supreme law of the land, the Constitution or laws of the States to the contrary notwithstanding. Whenever the constitutional powers of the Federal government and those of the State come into conflict, the latter must yield."

In *Miller* v. *Kaliwerke Ascherleben A. G.* (283 Fed. 746), a case involving a conflict between the New York Personal Property Law (§ 174), and the Trading With the Enemy Act, in relation to the issuance to the Alien Property Custodian of new certificates of stock for those lost or destroyed, without the necessity of his complying with the provisions of the State Law, the court said: " * * * unless for some reason these acts of Congress are unconstitutional they override the law of the State of New York in so far as the two are in conflict."

In view of these pronouncements, it is manifest that the Federal statute is dominant. Conceding this to be so, does it, in consequence, bar the right of plaintiffs to the relief sought under the State act, or may such redress nonetheless be granted? I am of the opinion that such action may nevertheless be maintained, but I think it should be said, in general, that the extent and application of these statutes — State and Federal — cannot be governed by a precise or exact formula, and that each case must be determined upon its own particular facts and circumstances.

In so far as the acts complained of are concerned, they were all committed prior to the effective date of the Federal order; the last instance of wrongdoing set forth occurred on May 6, 1942; the effective date of the General Price Regulation as established by the order is May 18, 1942. The statute may be retroactive, though it is not necessary to pass upon that point at this time. However, it is clear that the regulation alluded to is not retroactive, for it provides (§ 23): " (a) The provisions of this General Maximum Price Regulation * * * shall not apply to establishments selling at retail until May 18, 1942 * * *."

As to the application and effect of subdivision (d) of section 205, its purpose was and is to protect those who in good faith abide by the statute and regulations promulgated under and in pursuance of its authority, to protect those conforming thereto from civil or penal punishment, whereby those complying with the Federal statute and regulations might, as a result, offend State laws; here the supreme sovereign intervenes and surrounds good faith compliance with immunity and protection, recognizing the anomalous situation thus created and the peril to which such person is subjected by his allegiance to the Federal law and regulations.

The defendant's contention appears to be that the enactment of this Federal act has, during its operative period, rendered wholly impotent the State Fair Trade Law and violations thereof may be indulged in and that they cannot be made the basis of an action for redress in the State courts; that the effect of the Federal enactment is the abrogation of the State Law. I am not able to subscribe to this view.

Subdivision (d) of section 205 is a statute of exemption and immunity, it is true, but it is not unconditional and absolute; rather it is conditional; the statute is of a defensory character, and its exemptions and immunities are expressly conditioned on *good faith* adherence to and compliance with the statute and with any regulation, order, price schedule or requirement thereunder.

If, for example, the Price Administrator established a maximum price ceiling for retailers which was below minimum price levels for resale as fixed by agreement and as affected by a State unfair sales act, and, therefore, ordinarily, in violation of the State Act, and the retailer sold at a higher price than the maximum established by the Price Administrator yet below the minimum resale price level as fixed by the agreement, such retailer could not successfully invoke the Federal Statute as a protection and defense to a suit brought against him for violation of the State Fair Trade Law as the Federal Statute is only applicable " in respect of anything done or omitted to be done *in good faith,* pursuant to any provision of this act, or any regulation, order," etc., under it. While this is but a single illustration, others come to mind.

Therefore this Federal Statute does not prohibit or bar a suit brought pursuant to the State Fair Trade Law even though the maximum resale price established by the Price Administrator conflicts with the minimum retail resale price as fixed by the stipulation of the parties and as affected by the State Fair Trade Law, in the absence of a showing by the party complained against that the act of deviation from the State Law was occasioned and necessitated by good faith compliance with the Federal Law as the paramount authority to which obedience was surrendered.

Thus, when suit is brought under the provisions of the State Fair Trade Law, the accused may defend and by way of exoneration urge that his conduct was compelled by the edict of the Price Administrator to which he yielded, and that in consequence he is entitled to the protection afforded by subdivision (d) of section 205. He may not, however, rest solely on the plea of the existence of the Federal statute and stop there; he must, in order to avail himself of its protection, go further, and in addition prove his good faith compliance with its provisions and requirements. " Good

faith " is generally a question of fact and where such a defense is interposed to the State court suit, and it is established to the satisfaction of such tribunal that the defense of good faith compliance with the fiat of the Price Administrator is founded in truth, the protection of the statute will be held to be a complete bar to any right to recover against such retailer, either under civil or criminal law.

The plaintiff advances the contention that the defendant could have avoided the dilemma which he now claims will attend his compliance with this court's decree if any injunction is granted restraining him from selling below the minimum resale prices fixed by the price schedules under the agreements, by making application as provided in subdivision a of section 18 of the Regulations to be relieved of the hardship thus visited upon him by the maximum price established by the Price Administrator, and that he had ample time to seek permission of the O. P. A. to adjust his prices to the prevailing minimum resale price levels. In the O. P. A. release of May 22, 1942, it is stated that " Where a retailer is ' frozen ' at a minimum price which forces him to sell below the minimum price set in a fair trade agreement that was in effect in March, he may apply under section 18 (a) of the Regulation for an adjustment of his ceiling on the ground that it is abnormally low in relation to the maximum prices of the same or similar commodities established * * * for other sellers at retail." And it is contended by plaintiffs that it was the defendant's duty, in the circumstances, to make such application and obtain such price adjustment to avoid violation of the State fair trade law; that where the restraint may be removed upon application it is obligatory to seek it, and *Brown* v. *Morgan & Co., Inc.* (177 Misc. 626; Id. 763) is relied on in support of this claim.

I do not think that case is properly applicable here; the instant case involves the application and effect of this particular defensory statute which is available in a proper case, whether application for price adjustment is made under subdivision (a) of section 18 of the Regulations or not, a feature not present in the *Brown* case, and the situations are not truly comparable in that regard.

On the fundamental question as to whether such a suit as this is maintainable in view of the enactment of this Federal law, and particularly subdivision (d) of section 205, it is my view that it is maintainable, subject to the defense authorized therein, and it is my belief that this construction is not inconsistent with the provisions and purposes of the said act.

Holding, as I do, that this action is maintainable, and that this court has the power to grant the relief sought, the point now

to be determined is whether upon the facts presented a case has been made out warranting the issuance of an injunction *pendente lite.* I do not think it has been. All of the violations complained of occurred prior to the effective date of the Administrator's price fixing, or price " freezing " order, which, as stated, became effective as to certain retail transactions of commodities on May 18, 1942.

Under the terms of the mentioned General Maximum Price Regulations issued by the O. P. A., the highest prices charged for a commodity during the month of March by any seller were established as the maximum or ceiling prices at which such commodities could thereafter be sold by such seller. It is not shown by the moving papers that since May 18, 1942, the defendant is selling at prices other than those established by the order made in that respect by the Price Administrator, and in the absence thereof the drastic remedy sought cannot be awarded prior to trial.

Accordingly, the motion is denied. Settle order.