THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ROQUE MARTÍNEZ BAZ, Defendant and Appellant.

No. 10045. Argued December 20, 1943.—Decided January 12, 1944.

*Géigel & Silva* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal),* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

The appellant was convicted and sentenced for a violation of Act No. 6 of November 17, 1941 (First Special Session, p. 14). Said violation consisted in that the appellant, a wholesale merchant, on March 4, 1942, did unlawfully, wilfully, and maliciously sell to Luis Antonio Ruiz, a retail merchant, five hundredweight of rice at a price higher than the one fixed by the Food and General Supplies Commission.

The appellant does not dispute the facts charged against him, but he urges that we should reverse the judgment:

(1) Because the act alleged to have been violated is void in that it contains an unconstitutionad delegation of power;

(2) Because the lower court acted without jurisdiction in sentencing him, inasmuch as the complaint fails to set forth that the price determined by the said Commission had been previously approved by the Secretary of Agriculture of the United States;

(3) Because any determination which the Commission might have lawfully made as to the selling price of rice, which is an agricultural product, ceased to have any effect or validity on January 30, 1942, when the Act of the Congress of the United States entitled, "Emergency Price Control Act of 1942," became effective.

■■ I. *Does the law assailed contain an unconstitutional delegation of power?*

Section 1 of Act No. 6 of 1941, after creating the Food and General Supplies Commission, provides that the Commission shall declare, with the approval of the Governor, what articles are to be considered *of necessity.* Further on, in subdivision 4 of the same §1, it confers upon said Commission the power, subject to the approval of the Governor, to determine the prices at which all *articles of necessity* may

be sold by private parties, and provides the penalty which will be incurred by any person selling such articles above the rate determined by the Commission, or at quantities or to persons prohibited by the Commission. So that the powers of the Commission are confined to *articles of necessity*.

The appellant argues that nowhere in the law is the phrase "articles of necessity" defined, either directly or indirectly; that the Legislature failed to fix any standard or rule which would guide the Commission in determining what articles are to be considered of necessity, and that, as the law contains no limitation to that effect, the Commission might act arbitrarily or capriciously in makng such determination. The appellant also urges that the phrase "articles of necessity" is entirely vague and indefinite and is subject to different interpretations depending upon the inclinations and tastes of the various persons called upon to interpret it.

We concede that the Act does not expressly define the phrase "articles of necessity," but from the context of the statute and from its "Declaration of Policy" it is evident that said phrase is confined to staple foodstuffs (*artículos alimenticios de primera necesidad*). The "Declaration of Policy" says:

"It is the policy of this Act to meet inflation and speculation in the prices *of commodities for the sustenance of the inhabitants of Puerto Rico* due to present world conditions, to the national defense program of the United States, and to the emergency proclaimed by the President, through the establishment of a governmental agency to serve and act as a stabilizing factor in the local market for the protection of the people against economic distress. (Italics ours.)

From §1 of the Act we take the following paragraphs which show that the phrase "articles of necessity," as used in the Act, means staple foodstuffs:

"The commission shall make surveys of *food* requirements of the people of Puerto Rico, the prevailing wages, the purchasing power in general, and the cost of articles of necessity.

" * * * * * * *

"Having regard to the prevailing wages and salaries, the purchasing power in general, and the cost of articles of necesstiy, the commission shall have the following powers:

"1. It may purchase such articles *as are necessary for the sustenance of the inhabitants of Puerto Rico.*

" " ❋ ❋ ❋ ❋ ❋ ❋ ❋

"9. It shall have power to take whatever measures it may deem necessary with regard to the *planting and growing of food products* for use during the period of the present emergency, and for such time thereafter as may be necessary, including the power to purchase seeds and roots and to plant and cultivate them on lands belonging to The People of Puerto Rico or any municipality thereof, to rent or condemn the lands of private persons for such purpose and for such period of time as may be necessary, provided that the use of such private lands cannot be otherwise obtained. It shall have the power to distribute the products thereof in the manner provided for commodites purchased by it.

"10. It shall have power to organize and direct cooperatives of production of articles *of prime* necessity, as well as consumption cooperatives which function in coordination with production cooperatives." (Italics ours.)

The authorities do not require that, for a delegation of power to be constitutional, the standard should be fixed with mathematical precision or exactness. The degree of intricateness of the matter to be regulated shall determine the broadness of the language to be used. Unless the standard is not expressed, or unless it is so extremely vague that in point of fact the standard is nonexistent, the presumption of constitutionality which every statute carries with it would be sufficient to sustain its validity. For example, in the case of *National Broadcasting Co.* v. *United States et al.* (May, 1943), 319 U. S. 190, the constitutionality of the Federal statute entitled "Communications Act of 1934" was attached on the ground that it contained an unconstitutional delegation of power. The powers of the Federal Communications Commission were set forth in §303 of the Act in the following terms:

"Except as otherwise provided in this Act, the Commission from time to time, as public convenience, interest, or necessity requires, shall—

"(a) Classify radio stations;

"(b) Prescribe the nature of the service to be rendered by each class of licensed stations and each station within any class;

"* &ast; &ast; &ast; &ast; &ast; &ast;

"(f) Make such regulations not inconsistent with law as it may deem necessary to prevent interference between stations and to carry out the provisions of this Act . . . ;

"(g) Study new uses for radio, provide for experimental uses of frequencies, and generally encourage the larger and more effective use of radio in the public interest;

"* &ast; &ast; &ast; &ast; &ast; &ast;

"(i) Have authority to make special regulations applicable to radio stations engaged in chain broadcasting;

"* &ast; &ast; &ast; &ast; &ast; &ast;

"(r) Make such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of this Act . . . "

Declaring said standards sufficient for the purpose of a delegation of power, the Supreme Court of the United States, through Mr. Justice Frankfurter, said:

"The criterion governing the exercise of the Commission's licensing power is the 'public interest, convenience, or necessity.' Sections 307(a) (d), 309(a), 310, 312."

Further on it said:

"The Commission was, however, not left at large in performing this duty. The touchstone provided by Congress was the 'public interest, convenience, or necessity,' a criterion which 'is as concrete as the complicated factors for judgment in such a field of delegated authority permit.'"

And in the case of *McGrew* v. *Industrial Comm.* (Utah, 1938) 85 P. (2d) 608, cited with approval in *Luce & Co., S. en C.* v. *Minimum Wage Board*, 62 P.R.R. 431, 446, the standard provided by the Legislature of Utah in a statute regulating wages and working hours for women and

children engaged in the retail trades, was that the wages paid in the industry should *be adequate to supply the cost of proper living or that the number of hours of employment should be consistent with the health, morals, or welfare of the workers.* The sufficiency of the standard was upheld. Among other things it was said that the standard need not be expressed with mathematical preciseness or be one by which only one conclusion might be reached.

The fact that in the Act now under discussion the phrase "articles of necessity" is used, and not "staple commodities," as was done subsequently in Act No. 228 of May 12, 1942, which created the General Supplies Administration and repealed the Act of November 17, 1941, does not mean that the standard provided in the repealed statute was insufficient. If, as happened in the present case, an attempt was made to challenge the validity of the act on the ground of the insufficiency of the standard, it was proper that the Legislature should seek to avoid that objection when enacting the new law.

 II and III. *The effect of the Federal statute entitled "Emergency Price Control Act of 1942," upon the Insular Act creating the Food and General Supplies Commission.*

We will start the discussion of the second and third assignments of error by restating what we said on this point in the case of *Luce & Co., S. en C.* v. *Minimum Wage Board of Puerto Rico, supra:*

"In order that it can be maintained that the federal statute excludes an insular act which seeks to protect the health and welfare of the public, it is not enough that the two laws should embrace the same subject matter. It is necessary that the insular law by its own terms or in its practical administration be in conflict with the Act of Congress or manifestly infringe the public policy of the federal statute."

In the present case the offense was committed on March 4, 1942. It is true that the Federal statute entitled, "Emer-

gency Price Control Act of 1942," was approved on January 30, 1942. It is likewise true that the Federal statute is by its own terms applicable to Puerto Rico, and that §945 thereof expressly provides that no law in force on January 30, 1942, shall be construed to authorize taking any action inconsistent with the provisions and purposes of the cited Federal Act. But it is no less true that, although the Emergency Price Control Act of 1942 became effective on January 30, 1942, the regulations issued by the Office of Price Administration fixing the prices in accordance with the authority conferred upon it by §901 of said Act, did not become effective until May 18, 1942, and as said regulations have no retroactive effect and are therefore applicable only to sales made subsequent to their approval, it is evident that on March 4, 1942, the date on which the offense was committed in this case, no conflict whatsoever could exist between the Federal and the Insular statutes. *Schreirer* v. *Siegel* (1942) 36 N.Y.S. (2d) 97, 178 Misc. 711. Inasmuch as the Insular law was then in full force and effect, it was not necessary to allege in the complaint that the price fixed for rice by the Food and General Supplies Commission had been previously approved by the Secretary of Agriculture of the United States.

The judgment appealed from will be affirmed.

Mr. Justice Snyder did not participate herein.