HELENA RUBINSTEIN, INC., complainant-appellant,

*v.*

CHARLINE'S CUT RATE, INC., and CHARLES SCHECK, individually and trading as CHARLINE'S CUT RATE, defendants-respondents.

[Submitted February 12th, 1944.   Decided April 13th, 1944.]

*Messrs. Gennet & Rafner (Mr. Samuel A. Gennet* and *Mr. Henry M. Flateau* and *Mr. Gustav Nadel* (of the New York bar), of counsel), for the appellant.

*Messrs. Bilder, Bilder & Kaufman (Mr. Samuel Kaufman* and *Mr. Bernard Hellring,* of counsel), for the respondents.

The opinion of the court was delivered by

HEHER, J.

Complainant's business is the marketing of cosmetics and beauty preparations under its own trade-marks and brands. The bill pleaded the resale by defendant, continuously from November, 1941, to May, 1942, in the conduct of its business in the City of Summit, of certain of complainant's products below minimum resale prices fixed by contract with retailers pursuant to *R. S. 56:4–3, et seq.,* popularly known as the "Fair Trade Act," and charged that thereby defendants were guilty of unfair competition to the detriment of complainant's good will. It prayed an injunction against the continuance of the allegedly unlawful practices. The learned Vice-Chancellor advised a decree of dismissal of the bill for failure to state a cause of action, on the theory that price regulations promulgated by the Federal Price Administrator on April 28th, 1942, effective the ensuing May 11th, in the exercise of the power conferred by the Federal Emergency Price Control Act of January 30th, 1942 (*56 Stat. 23, ch. 26; 50 U. S. C. A. App. 901, et seq.*) superseded the provisions of complainant's "Fair Trade contract or schedule" made under the state statute. The federal regulation fixed the highest

prices at which defendants sold complainant's products during March, 1942, as the "ceiling" or maximum prices for such commodities. These prices were below those prescribed by complainant's Fair Trade schedule.

The decree was entered on defendants' motion to strike out the bill on the ground that it disclosed no cause of action cognizable in equity, in that the federal price rules take precedence of stipulations made under the state Fair Trade Act. It is acknowledged that defendants sold complainant's products during March, 1942, and prior and subsequent thereto, "at prices below complainant's so-called fair trade schedule and in fact without regard to any such fair trade schedule;" but it is insisted that this "practice was carried on by defendants as of right and not as a violation," for reasons set forth in an *ex parte* affidavit submitted by defendants, and that "these reasons constituted and still constitute good and valid defenses against any attempt by complainant to enforce any so-called fair trade price against defendants." The validity of these defenses is not at issue here. The ground of the motion to dismiss and of the decree itself was, to use defendants' language, that they "were frozen to the prices which they charged in March, 1942," and "a rise in those prices would constitute a direct violation" by them "of the Emergency Price Control Act as well as the regulations issued pursuant thereto."

Thus, we are obliged to assume for present purposes that, as charged in the bill, defendants willfully and knowingly sold complainant's commodities in March, 1942, at prices less than those stipulated under *R. S. 56:4–5,* and are still offering such goods for sale under the prices thus established, and so are guilty of unfair competition actionable under *section 56:4–6,* unless that provision has been devitalized by the federal regulation. Defendants assert the right to continue the sale of complainant's products at prices less than the minima fixed under these provisions of the state Fair Trade Act, because compliance with this enactment will contravene the subsequently adopted federal price regulation. This position is untenable. The difficulty is one of defendants' own making—a consequent of their own wrongful acts.

First principles of equity and justice forbid that defendants shall continue to profit from their willful disregard of the state statute. It is not open to them to invoke the federal rule as justification for the perpetuation of the original wrong. It is not a case of conflict between the federal and state regulations. The federal regulation was not designed directly to modify or supersede the minimum prices in effect in March, 1942, under the state Fair Trade Act. It operated upon the prices then charged by the individual retailer. He was enjoined against sales at prices above the highest levels which he charged during that month. This price level was constituted the ceiling "regardless of any contract or other obligation." Yet the dealer is not thus privileged to retail the commodities at prices less than the minima prescribed by the Fair Trade Act.

Defendants are under no obligation to vend complainant's products; and they are not free to retail them in violation of the state statute. Since the federal regulation binds them to prices adopted in disregard of the state act, relief can be had only through the federal authority. Under an amendment to the Federal General Maximum Price Regulation, promulgated on September 19th, 1942, such relief may be had if the retailer's maximum price, as fixed by the federal regulation, is less than the minimum price under the state Fair Trade Law, and the commodity was sold generally in the locality at such minimum price during the prior month of March, and the retailer has been permanently enjoined by a court of competent jurisdiction from selling the commodity below the minimum price. As thus amended, the federal regulation affords a flexible and expeditious procedure for the alleviation of the hardship of the general rule suffered by the individual seller whose prices during March, 1942, were abnormally low or were out of line with those of his competitors. Retailers in this class may, with the approval of the Federal Price Administrator, adjust their prices upward. In the second quarterly report made by the Federal Price Administrator (covering the period ending July 31st, 1942), it is said that the amendment was designed to meet those cases where low prices prevailed "for special reasons

such as sales and local price wars;" and in such cases, "to permit automatic adjustment of their ceiling prices."

The state rule yields only to the extent that it is repugnant to the federal regulation. The state statute is superseded only where the federal law takes full and exclusive control of the field of legislation. The decisive question is whether the federal regulation, fairly interpreted, is in actual conflict with the law of the state. An intention wholly to exclude state action will not be implied unless, when fairly construed, the federal rule is clearly in conflict with the state regulation of the same subject. *B. R. Waldron & Sons* v. *State Board of Milk Control, 131 N. J. Law 267.* Of course, all subsequent price regulations under the state statute are subject to the federal regulations.

Plainly, it was not designed that the "freezing" of retail prices at the level of March, 1942, should operate to the advantage of a retailer whose sales prices during that period violated the state Fair Trade Act, and thus to the detriment of all retailers of the commodities in the same category who had observed the requirements of the Fair Trade Act.

The New York case of *Schreier* v. *Segal, 178 Misc. 711; 36 N. Y. Supp. (2d) 97,* cited in the opinion of the Vice-Chancellor, was later reversed by the Appellate Division. *37 N. Y. Supp. (2d) 624.* The rationale of that decision is that the Congress did not intend "to put its stamp of approval upon unfair trade practices by permitting violators of a state fair trade law to profit at the expense of those who in good faith complied with its provisions."

The decree is accordingly reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 14.