[Civ. No. 13052.   First Dist., Div. One.   June 21, 1946.]

E. W. DOWNS, Respondent, v. BENATAR'S CUT RATE DRUG STORES (a Copartnership) et al., Appellants.

Tobriner & Lazàrus for Appellants.

Simeon E. Sheffey for Respondent.

WARD, J.—This is an appeal from a judgment restraining and enjoining defendants, their agents and employees from selling or offering for sale a certain commodity designated as "Von's Pink Tablets" at prices fixed by the system of prices generally accepted by dealers. Plaintiff's original complaint for injunctive relief relied on an allegation that on or about August 15, 1942, plaintiff adopted a system of business wherein written contracts were entered into in order to maintain minimum retail prices on the above commodity. (Bus. & Prof. Code, §16902, formerly § 1 of the Fair Trade Act.) A copy of the contract was attached to the complaint. It was further alleged that defendants refused to execute the contract. Plaintiff was permitted to file an amendment to the complaint to allege that contracts were entered into on or about January 1, 1939, and the written agreement attached to the original complaint was omitted. Only one paragraph of the original complaint was materially amended.

Briefly, the facts, which are free from conflict, are as follows: Plaintiff owns the rights to conduct the business of

selling the pills in California. In this state he is the representative of the producers. The product is a registered trade mark commodity. Since its inception in 1929, in conducting the business, the practice has been to accompany the goods with an invoice whereon appear the words "stop price." It was plaintiff's testimony that "stop price" is a term in trade usage and created an agreement that the product would not be sold for less than the respective sums specified after the words "stop price." Many of these invoices were sent and received prior to March, 1942. It is admitted that during this period (1939, 1940 and 1941) defendants sold the 100 size for $3 and the 27 size for $1.09, prices which were below the "stop price." On April 11, 1939, plaintiff sent a letter to defendants, calling attention to their violation of the "California Fair Trade Act" which included the following sentence: "We do operate within the meaning of the California Fair Trades Act and therefore recommend that you change your prices immediately." At some time subsequent to the last invoice in 1941, after a personal telephone call from plaintiff to defendants, plaintiff ceased selling his product to defendants and thereafter defendants secured the pills from jobbers. In July, 1942, plaintiff's product was added to the retail druggists' list of drugs with minimum resale prices. At that time plaintiff prepared the formal written contracts heretofore referred to in the original complaint. There is no definite evidence that any of these contracts was ever signed by any of the retailers, though there is evidence with reference to the meaning of "stop prices" and evidence that one drug company with stores throughout the state had been notified that the product was "fair traded" and the drug company needed no further notice but immediately discontinued cutting the price of the pills.

On the basis of these facts and pleadings the trial court found that "on or about the 1st day of January, 1939, plaintiff . . . did adopt a system of doing business . . . [whereby] written contracts were entered into between plaintiff and his wholesale and jobbing distributors, . . . that defendants declined to execute said contracts . . . [and] That on the 9 day of July, 1942, defendants received notice of the fact that plaintiff was operating his business under the terms of the Fair Trades Act."

◼ Preliminarily it must be noted that any rights which plaintiff has must be predicated on rights accruing prior to

March, 1942. A federal bureau known as the Office of Price Administration, fixed the maximum prices for commodities and services as the highest price charged to a purchaser of the same class by the seller during March, 1942. The federal law is controlling and all merchants are required during the existence of the OPA to continue the particular price in vogue in 1942 unless exception is made. However, there is no evidence that the OPA has operated or been administered with any purpose of interfering with a Fair Trade Act. Amendment 62, adopted June 3, 1944, to the General Maximum Price Regulation under the heading ''Adjustment of Maximum Prices'' provides for an upward adjustment of prices '' (d) In the case of any seller at retail who shows: (1) That his maximum price for any commodity established under this Regulation is less than the minimum price in effect for such commodity during March 1942 pursuant to a contract entered into in accordance with a Fair Trade Act of any state; . . .'' It appears that one who had sold products unlawfully, that is, contrary to the provision of a fair trade act, should, under the OPA rules, have the prices correctly adjusted. Consequently there is no merit in appellants' contention that if this injunction is sustained they will be unable to sell plaintiff's products. Respondent's position—that even though his rights under the Fair Trade Act accrued after March, 1942, he is entitled to their protection—is not well taken. To protect minimum prices fixed after the General Maximum Price Regulation would defeat the purpose of the federal law, which during the period of the emergency is paramount. To permit injunctions against the sale of articles at less than minimum prices fixed after the General Maximum Price Regulation would raise the price of particular articles beyond the maximum prices of March, 1942. Those sellers whose maximum price was less than the minimum price could no longer sell the article, and hence only the channels with the higher price would be open, thereby raising the price to the ultimate consumer beyond the March, 1942, levels. To the extent that the purpose of the Office of Price Administration would be defeated, it must be considered to have superseded the Fair Trade Acts of the state. Therefore, the basic issues to be decided concern whether the facts proved give plaintiff any rights under the Fair Trade Act (Bus. & Prof. Code, §§ 16900-16905) prior to March, 1942, and if so, has the trial court so found.

The pertinent provisions of the Business and Professions

Code, upon which this action is based read: "Section 16902 . . . (a) No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others violates any law of this State by reason of any of the following provisions which may be contained in such contract:

"(1) That the buyer will not resell such commodity except at the price stipulated by the vendor.

"(2) That the vendee or producer require the person to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee.

"(b) Such provisions in any contract imply conditions that such commodity may be resold without reference to such agreement in the following cases:

"(1) In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.

"(2) When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.

"(3) By any officer acting under the orders of any court."

Section 16904 of the Business and Professions Code provides: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

■ Certain general principles must be noted with respect to these sections. There is no provision therein that the contract shall be in writing. There may be a violation of the Fair Trade Act by one who "is or is not a party to such contract." (§ 16904.) If a producer has an agreement with some of his vendees, written or oral, formal or informal, that a specified product, assuming it meets all necessary classification requirements of section 16902, be not resold for less than a minimum price, and another vendee has *knowledge* of such agreement, though there is no agreement with that vendee, and sells the product for less than the price specified in the agreement, then he has subjected himself to suit under the act. In *Dr. Miles Cal. Co.* v. *Sontag C. Stores Co.*, 8 Cal.

■

2d 178 [64 P.2d 726], the court said (pp. 178-179): "The action was brought to restrain defendant from selling plaintiff's trademarked articles at cut-rate prices, and in violation of a system of *contracts, of which defendant had knowledge,* between plaintiff and its distributors, both wholesale and retail, fixing the resale price of plaintiff's products. The complaint alleges that defendant was tendered such a contract but refused to execute it. The activities of defendant are described in detail, and it is alleged that such tactics have been indulged in for the purpose of inducing other distributors to break their contracts with plaintiff. The relief prayed for is that defendant be enjoined from selling plaintiff's trademarked articles at prices less than the resale price fixed by plaintiff in its contracts with other distributors.

"The amended complaint was filed in August, 1932, and judgment of dismissal was entered in January, 1933. Subsequent to the rendition of the judgment herein, the legislature amended the Fair Trade Act (Stats. 1931, p. 583) by adding thereto section 1½ (Stats. 1933, p. 793). This amendment prohibits the selling of any trademarked commodity at less than the price stipulated in resale contracts such as are described in the complaint 'whether the person so . . . selling is or is not a party to such contract', and defines such activities as unfair competition, and permits injunctive relief." (Emphasis added.)

Many years prior to the adoption of the Fair Trade Act, the California Supreme Court in *D. Ghirardelli Co.* v. *Hunsicker,* 164 Cal. 355 [128 P. 1041], held that a minimum resale price attached to a *case* of chocolate, if defendant's attention was called thereto at the time of purchase, could be the basis of an action for breach of contract. (See, also, *Grogan* v. *Chaffee,* 156 Cal. 611 [105 P. 745, 27 L.R.A.N.S. 395].) Under the Fair Trade Act the delivery of a product with an accompanying notice of a minimum price, and the receipt of the product by the vendee, are prima facie evidence that the vendee accepts under the specifications set forth in the notice. (*Ingersoll & Bro.* v. *Hahne & Co.,* 88 N.J.Eq. 222 [101 A. 1030], *Id.,* 89 N.J.Eq. 332 [108 A. 128], cited with approval in *Max Factor & Co.* v. *Kunsman,* 5 Cal.2d 446 [55 P.2d 177].) The cases dealing with anti-trust laws hold that it is a question of fact in view of all the circumstances whether contracts are entered into when notice of minimum retail prices are given. (7 A.L.R. 449; 19:926; 103:1331; 104:1452.) There is no

practical difference in the question of mutual assent necessary to form a contract whether the Fair Trade Act or the antitrust laws are involved. It is a question of fact whether contracts are entered into when notice of minimum retail prices are given. ■ There is no merit in the appellants' contention that invoices may not be contracts under the provisions of the Fair Trade Act or evidence of the conditions upon which products are delivered inasmuch as the statute requires no particular formality. A California case cited in support of their position is *Universal C. Co.* v. *M. C. Gale, Inc.*, 40 Cal.App.2d 796 [105 P.2d 1003], wherein, considering an invoice, the court stated (p. 800): ". . . that standing alone an invoice is not regarded as evidence of title. It is neither a bill of sale nor evidence of a sale, and does not transfer the title, and it is as appropriate to a bailment as to a sale." That language is not pertinent to the question here involved. Respondent asserts that the invoices were contracts indicating the terms of the sale according to business custom and that no specific form of contract is required under the code. It is unnecessary to decide whether the invoices standing alone would constitute a contract. The invoices, when taken in connection with plaintiff's testimony concerning the meaning of "stop price," and the plaintiff's conduct, as evidenced by the letter and his actions, are sufficient to support the finding that plaintiff entered into contracts. That part of the finding concerning written contracts is immaterial, except insofar as it shows the confusion in the findings based upon the first complaint under which no relief could have been given because of the federal laws.

■ The vital question in this case concerns the appellants' knowledge of the contracts at the time they sold for less than the minimum price. The respondent's right under the statute is incomplete unless the vendee sells with knowledge. The following facts prove that prior to March, 1942, defendants' had knowledge that "Von's Pink Tablets" should not be sold at a retail price lower than that designated by plaintiff: (a) The invoices read as follows: "1 dozen Von's Pink Tablets 100s $28.00 dz Discount 7½% $25.90 Stop Prices: 27s—$1.25 100s—$3.50." (b) There was uncontradicted testimony that "stop price" is a term of trade usage, meaning that the commodity should not be sold for a sum less than that specified in the invoice. (c) There is evidence to show that defendants were notified by telephone communications monthly that

there was a violation of the Fair Trade Act. (d) In 1939 plaintiff forwarded a letter to defendants reading: "We have again investigated the prices you are asking for Von's Pink Tablets and again your sales people quoted $1.19 and $3.39 instead of $1.25 plus State Sales Tax and $3.50 plus State Sales Tax. *This as you know is a direct violation of the California Fair Trades Act.* We *do* operate within the meaning of the California Fair Trades Act and therefore recommend that you change your prices immediately." (Emphasis added.) (e) The plaintiff refused to supply the pills to defendants after a certain telephone call, and defendants' action in obtaining the commodity from jobbers. Defendants testified that a conversation was held relative to the price at which the items were sold. (f) The defendants stated that the price was reduced "to make a lead." (g) Defendants testified that they knew each bottle carried the retail price. (h) Defendants testified that "Fair Traded" articles are recognized from contracts or "by the fact that there is a universal knowledge in the business that they are 'Fair Traded.' " The foregoing evidence called for a finding that defendants had knowledge prior to March, 1942, and continued to sell below the minimum price; but despite such evidence the trial court found only that on the 9th day of July, 1942, defendants received notice of the fact that plaintiff was operating his business under the terms of the Fair Trade Act. The date so specified was evidently taken from the original complaint. In order to support a judgment in plaintiff's favor, because of the General Maximum Price Regulation, it was essential that the trial court find that defendants had knowledge prior to March, 1942. Therefore, in order that there be a finding which will conform to the evidence in the case, this court, exercising the authority conferred by article VI, section 4¾ of the Constitution, and by section 956a of the Code of Civil Procedure, does hereby find that defendants had knowledge that the product, Von's Pink Tablets, was subject to contracts requiring retail minimum prices under the Fair Trade Act prior to March, 1942, and sold said product prior to March, 1942, at less than those minimum prices.

A minor question arises as to whether any right of plaintiff is barred by the statute of limitations or laches. In pleading the statute of limitations it is necessary to refer to the "section and *subdivision* thereof" relied upon. (Code Civ. Proc., § 458.) (Emphasis added.) Defendants failed to

plead the statute of limitations properly. ▮ There is no finding called to our attention covering the plea of laches. It must be assumed that if there was such a finding it would be adverse to appellants. In the defense of laches, it is necessary to show that the party taking advantage of the defense has suffered some injury as the result of delay. (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]; *Zakaessian* v. *Zakaessian*, 70 Cal.App.2d 721 [161 P.2d 677].) In the present case no prejudice to defendants has been shown. If they desire now to obey the Fair Trade Act it is an easy matter to adjust with OPA. (OPA GMPR Amdt 62 to Commodities and Service, Part 1499; *Schreier* v. *Siegel*, 265 App.Div. 36 [37 N.Y.S.2d 624]; *Helena Rubenstein, Inc.* v. *Charline's Cut Rate, Inc.*, 135 N.J.Eq. 145 [36 A.2d 910].)

The findings are modified as herein indicated. The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.